**Ilmar KOIVUNEN, Appellant,**

v.

**STATES LINE, Appellee.**

**No. 20941.**

United States Court of Appeals
Ninth Circuit.

Jan. 26, 1967.

Nels Peterson, Gerald H. Robinson, Portland, Or., for appellant.

Nathan J. Heath, of Gray, Fredrickson & Heath, Portland, Or., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and BARNES and ELY, Circuit Judges.

ELY, Circuit Judge:

The appellant was the plaintiff below. He instituted his suit in an Oregon state court, seeking damages for personal injuries which he suffered while working as a longshoreman aboard a vessel owned by appellee. The appellee removed the suit to the District Court, which assumed jurisdiction under 28 U.S.C. §§ 1332 and 1441. In a jury trial, a verdict of $1000 was rendered in appellant's favor, and judgment was entered accordingly. Appellant moved that the trial judge grant a new trial unconditionally, or that he grant a new trial unless appellee would accept the imposition of such additional amount of damages which the judge might fix. The motion was denied, and this appeal followed. Our jurisdiction rests upon 28 U.S.C. § 1291.

■ The appeal is based upon only one contention, namely, that the evidence was insufficient to support instruction to the jury that if appellee's responsibility should be determined, appellant's damages should be reduced according to the degree of contribution of his own negligence, if any, to the accident. Put another way, the appellant insists that he was free of contributory negligence and that we should hold, as a matter of law, that the evidence was inadequate to support a contrary determination.

Review of the record convinces us that the judgment must be affirmed.

The accident which produced the injury occurred in the number two hatch of the vessel, which, at the time, was docked in Coos Bay, Oregon. The cargo, bales of pulp, had been stored at Longview, Washington. The bales had been stacked to a height of seven or eight feet fore and aft in the hatch and the wings. The center area directly beneath the hatch was left open. The bales were shored by vertical boards against them. The vertical boards were supported by bracing, "toms" extending from the top of the shoring to points where they were nailed to the deck.

After departing Longview and while crossing the Columbia River Bar en route to Coos Bay, the vessel encountered heavy winds and pitched and rolled moderately in rough seas. She had been tied at the Coos Bay dock for three or four days before the appellant was injured.

On the day of the accident, appellant, with three other longshoremen, had worked in the number two hatch. One of the four was not produced as a witness. The others testified that they had been instructed to remove the "toms" and shoring and to begin work in the aft section. The appellant and his son, one of the four workers, testified that they worked in the aft end of the hatch only and that they had there taken out the "toms" and commenced to remove the shoring. The appellant testified that he stopped work to remove a thermos bottle to a safe place at the forward end of the hatch. He related that as he commenced to return to the aft end, he stopped to pick up a peavey and the forward shoring collapsed upon him. The appellant, his son, and a third workman testified that they had not loosened the "toms" in the forward part of the hatch or even touched them.

Liability of the appellee was fixed upon the jury's apparent acceptance of his claim that there was negligence in the manner in which the cargo was stowed, shored, or braced. The defense of contributory negligence was based upon the plea, which we generally state, that appellant's own negligence contributed as a proximate cause of the accident and resulting injuries. The verdict was a general one; consequently, one may only assume that the amount of the award was an amount diminished by application of the pertinent instructions upon determination that negligence of the appellant contributed to some extent as a proximate cause of his misfortune. It may be that the jury, determining absence of contributory negligence, fixed the award-

ed sum as the total amount of damages actually sustained. It was not required to accept appellant's contentions as to his loss.

■ This case classically emphasizes the desirability of special interrogatories in those classes of claims based on negligence, such as suits brought under the Federal Employers' Liability Act or the Jones Act, wherein the comparative negligence rule is applied. Had there here been a specific jury finding that the appellant was not negligent or that negligence on his part was not a proximate cause of the accident, it is unlikely that an appeal would confront us. Certainly, one could not have been taken upon the basis of the only specification of error which is now made. On the other hand, if we agreed with appellant, we would be enabled, with specific findings as to the total damages sustained and the degree of contribution of appellant's negligence, to remand the case and direct that a judgment for the whole amount of appellant's damages be entered in his favor. A retrial would thus be avoided.

■■ Now looking again to the evidence here, we see, as did the district judge, a genuine issue of fact as to the existence of contributory negligence. It is true, as appellant urges, that acceptance of the direct testimony, particularly that given by appellant and his son, would lead to the conclusion that nothing done by the four longshoremen produced the collapse at the forward end of the hatch. In the light of all the circumstances, however, the jurors were not required to accept the testimony. They were obliged to consider all material facts shown by the evidence together with such reasonable inferences as they might draw therefrom. A peavey, a longshoreman's tool which would be used to dislodge the "toms," was admittedly seen by appellant at the point where the collapse occurred. The jury may have reasoned that the appellant and his son were mis-

taken, that the tool had in fact been used by one of the workmen to loosen the forward "toms," and that the appellant, exercising the reasonable care of an experienced longshoreman, would not have been ignorant of newly created danger to which he exposed himself. The jurors heard the testimony and observed the manner in which it was presented. From their observation, denied to us, they may have discerned lack of veracity in the testimony which appellant emphasizes.

Following its rough voyage, when the shoring did not collapse, the ship was dockside for three or four days. Still there was no collapse until appellant and his companions commenced their work in the hatch. Appellant contended that the shoring, inadequate and improperly installed, had become loosened from the effect of the heavy seas and that the ultimate collapse was produced, without immediate human intervention, by the swells, though comparatively gentle, of the dockside waters. The validity of this argument depends, too, upon the indulgence of inferences, and, if it were accepted, it would not preclude the conclusion that an expert longshoreman, as his first step, would conduct a careful examination, would be able to detect instability in all or some of the "toms" which gave way at the same time, and would take whatever action might be reasonably necessary to avoid possible danger or otherwise protect himself against it.

■ Evidence of witnesses, especially those who have a biased or prejudiced interest in the result of the trial in which they testify, need not be accepted at face value.

■ "Circumstantial evidence * * may * * * be more certain, satisfying and persuasive than direct evidence." Michalic v. Cleveland Tankers, Inc., 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960).

Affirmed.