**LANCASTER OIL COMPANY, INC., a Florida corporation, Plaintiff,**

v.

**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a foreign corporation, Defendant.**

No. 78–0092.

United States District Court,
N. D. Florida,
Gainesville Division.

Jan. 30, 1980.

W. N. Avera, Kimberly R. Nesmith, Gainesville, Fla., Miller Lang, Trenton, Fla., for plaintiff.

John M. Howell, Charles Cook Howell, Jr., Jacksonville Beach, Fla., for defendant.

## MEMORANDUM OPINION

HIGBY, District Judge.

This is an action by Lancaster Oil Company, Inc. (hereinafter Lancaster Oil), for a judicial declaration [1] that its Policy Number 21C795198 with Hartford Accident and Indemnity Company includes uninsured motorists protection limits of $100,000 per individual and $300,000 per accident and for reformation of the policy to reflect those limits. The citizenships of the parties are diverse, and the amount in controversy exceeds $10,000. The court has jurisdiction. 28 U.S.C. § 1332 (1977).

On its face, the policy limits uninsured motorists protection to $15,000 per person and $30,000 per accident. The policy's general automobile liability limits are $100,000 per individual and $300,000 per accident. Lancaster Oil is relying upon Section 627.727(1), Florida Statutes (1977) [2], which prohibits delivery or issuance in Florida of automobile liability insurance unless uninsured motorists protection with the same limits as the liability insurance is included. An insured, however, is allowed to

---

1. Actions for declaratory judgment are created by Chapter 28 United States Code, Section 2201 (1977).

2. The years 1975 through 1977 are involved. During the period the pertinent provisions of the statute did not change. § 627.727(1), Fla. Stat. (1977); § 627.727(1), Fla.Stat. (1975); Laws of Florida, Ch. 180, § 3 (1973).

reject this coverage and select a lesser coverage. Unless the named insured selects lesser coverage, the uninsured motorists coverage is by operation of law equal to the general liability coverage. *Aetna Casualty and Surety Co. v. Fulton*, 362 So.2d 364 (Fla. 4th D.C.A.1978); *Lumbermen's Mutual Casualty Co. v. Beaver*, 355 So.2d 441 (Fla. 4th D.C.A.1978); *Allstate Insurance Co. v. Baer*, 334 So.2d 135 (Fla.3d D.C.A. 1976). Rejection of coverage equal to the liability limits must be affirmative and knowing. *Wilson v. National Indemnity Co.*, 302 So.2d 141 (Fla. 1st D.C.A.1974). Although rejection will not be implied from simply an application for coverage of a lesser amount, *American Motorists Insurance Co. v. Weingarten*, 355 So.2d 821 (Fla. 1st D.C.A.1978), the nuances of uninsured motorists coverage do not have to be explained unless the insured requests an explanation. *Auto-Owners Insurance Co. v. Yates*, 368 So.2d 634 (Fla.2d D.C.A.1979), *cert. den., Yates v. Auto-Owners Insurance Co.*, 378 So.2d 351 (Fla. 1979). And contracting adults are presumed to understand the agreements they sign. *Cf., Lopez v. Midwest Mutual Insurance Co.*, 223 So.2d 550 (Fla.3d D.C.A.1969), (presuming a fifteen year old comprehended an application, less clear than the one here, rejecting uninsured motorists coverage).

Resolution of this dispute depends upon determination of a single fact: whether Lancaster Oil affirmatively rejected uninsured motorists coverage equal to its liability coverage and selected the lesser coverage shown by its policy. Lancaster Oil says it did not. Hartford says Lancaster Oil made the crucial election in 1976. The parties agree that any rejection and selection of lesser coverage, by operation of Section 627.727(1), Florida Statutes (1977), would carry forward to the 1977 policy involved here. *See, Hartford Accident and Indemnity Co. v. Sheffield*, 375 So.2d 598 (Fla.3d D.C.A.1979); *Allstate Insurance Co. v. Duffy*, 237 So.2d 225 (Fla.3d D.C.A.1970).

As the plaintiff's quite able counsel commented during the trial, this is one of the rare occasions when the outcome of a dispute turns on accepting one witness' account of the facts over another witness' directly conflicting account of the same facts. The plaintiff relies primarily upon its President's testimony that he was never informed of uninsured motorists protection options, that he did not reject coverage equal to the liability coverage, that he did not mark the box indicating minimum coverage on a supplemental application for uninsured motorists coverage, and that he did not recall signing the application, although he admits the genuineness of his signature. The defendant presented testimony of two former employees. One, Ms. Shelley Travis, testified she explained the uninsured motorists protection options to Lancaster Oil's President and he chose minimum coverage. The other, Ms. Vita Hayhurst, testified she overheard a conversation about uninsured motorists coverage between Ms. Travis and Lancaster Oil's President. Hartford also relies upon an application for minimum uninsured motorists protection bearing Lancaster Oil's President's signature.

In resolving the conflicts in evidence, the court has carefully considered the "carriage, behavior, bearing, manner and appearance" of the witnesses. *Wood v. Commissioner of Internal Revenue*, 338 F.2d 602, 605 (9th Cir. 1964). As is appropriate, the court has also considered the inherent improbability, *Factor v. Commissioner of Internal Revenue*, 281 F.2d 100 (9th Cir. 1960), *cert. den.*, 364 U.S. 933, 81 S.Ct. 380, 5 L.Ed.2d 365 (1961), of plaintiff's college-educated, successful President signing without reading an insurance application.

The relative interests of the witnesses in the outcome were also considered. *Koivunen v. States Line*, 371 F.2d 781 (9th Cir. 1967); *Wood v. Commissioner of Internal Revenue*, 338 F.2d 602 (9th Cir. 1964). Lancaster Oil argues Mr. Lancaster is a disinterested witness; the suit was brought to aid an employee injured by an uninsured motorist. One does not have to stand to gain from a lawsuit to be interested in its outcome. Lancaster Oil cared enough about the trial's outcome to bring the lawsuit. Its witness was also its representative. And, as a driver of the insured vehi-

cles, he would benefit personally from an increase in insurance protection. Ms. Travis and Ms. Hayhurst, on the other hand, have no present relationship to a party or any interest in this lawsuit. Where the testimony has conflicted, the court has been convinced by that of Ms. Travis and Ms. Hayhurst. *Compare, Santana v. United States,* 572 F.2d 331 (1st Cir. 1977), (plaintiff's testimony uncontradicted and reasonable), with *United States v. DeRose Industries, Inc.,* 519 F.2d 1066 (5th Cir. 1975), (jury free to reject testimony of one witness).

■ Lancaster Oil has argued the supplemental application since it is incomplete [3] cannot have effect. But testimony showed the parties knew and agreed the application affected the policy involved here. When an insurance contract is unclear, parol evidence may be considered. *English and American Insurance Co., Ltd. v. Swain Groves, Inc.,* 218 So.2d 453 (Fla. 4th D.C.A.1969); 22 Appleman, *Insurance Law and Practice,* § 12852 (1979).

Howell Eugene Lancaster is President of Lancaster Oil Company, Inc., with authority to bind the company and has been since 1972. The David F. Rutledge Agency wrote insurance for Lancaster Oil Company, Inc., during the period involved here. Hartford Accident and Indemnity Company was the insurance carrier. In December of 1975, Ms. Shelley Travis, an employee of the David F. Rutledge Agency, spoke with Mr. Lancaster about his company's insurance because the policies expired the first of the year. Mr. Lancaster was concerned about the size of his premiums. Reducing uninsured motorists coverage, Ms. Travis told him, was the only way to reduce his premiums.

During the first week of January, 1976, Mr. Lancaster came to Ms. Travis' office with a "Supplemental Application Protection Against Uninsured Motorists Insurance" [4] he received in the mail. At his request, Ms. Travis explained the supplemental application's meaning and his alternatives. She told him he could choose any size uninsured motorists protection ranging from none up to the maximum amounts available.

■ After learning this, Mr. Lancaster signed the supplemental application and marked the block stating:

I choose to have Protection Against Uninsured Motorists Coverage at a limit equal to the Financial Responsibility limit of liability of my state. If you check this block, your policy will provide the lowest limit of liability available. (Minimum).

By words and his completion of the supplemental application, Mr. Lancaster, for Lancaster Oil, affirmatively rejected uninsured motorists coverage equal to the liability coverage and selected lesser coverage.

Lancaster Oil is denied the relief it seeks. The Clerk shall enter a judgment for the defendant and tax the appropriate costs.

---

**3.** The application does not indicate the policy or insured it affects.

**4.** The information provided on the supplemental application included this explanation:

Dear Policyholder:

The laws of your state have recently been revised, requiring us to ask you how much insurance you wish for Protection Against Uninsured Motorists Insurance, commonly called "Uninsured Motorists" insurance. Please complete the form below to make your choice known to us. Return the completed form in the enclosed window envelope.

If you do not return the form, completed, we will be required to renew your policy at the maximum Uninsured Motorists limit for which you are eligible. While the maximum limit is what we recommend, we feel the choice should be yours.

Please contact your agent if you have any questions or wish advice on this matter.