483 So.2d 440 (1985)
BANKERS INSURANCE COMPANY, Appellant,
v.
John J. VASQUEZ, Keith Crowell, et al., Appellees.
Nos. 84-1942, 84-2168 and 85-267.
District Court of Appeal of Florida, Fourth District.
December 31, 1985.
Rehearing and Rehearing Denied March 11, 1986.
David F. Crow and Rosemary Cooney of Paxton Crow & Bragg, P.A., West Palm Beach, for appellant.
J. Mark Maynor of Beverly & Freeman, West Palm Beach, for appellee-Vasquez.
Rehearing and Rehearing En banc Denied March 11, 1986.
LETTS, Judge.
Once again we are asked to decide whether a signed rejection of uninsured motorist coverage (UM) is a "knowing" one, when the uninsured testifies that she was distracted, did not realize what she was signing, and was not sophisticated in insurance matters. The trial court denied the insurance company's motion for a directed verdict and the jury found that the insured had not made a knowing rejection. We conclude the motion for a directed verdict should have been granted and reverse.
In 1979 the Third District decided Alejano v. Hartford Accident and Indemnity Co., 378 So.2d 104 (Fla. 3d DCA 1979), holding that one who signs his name to an instrument rejecting uninsured motorist coverage cannot escape the consequences of his signature by alleging he did not understand or read the form, unless he shows facts indicating that he was prevented from reading it. See also Lopez v. Midwest Mutual Ins. Co., 223 So.2d 550 (Fla. 3d DCA 1969). There is no suggestion in the case at bar that the accused was prevented from reading the form. She claims only that she was distracted because of simultaneous consideration of the purchase of a helmet in the Honda motorcycle store where she filled out the application.
The above holdings from the Third District appear to us to be correct; however, subsequent cases have cast doubt on this issue and we cannot fault the trial judge for doing as he did in the case now before us. Perhaps the most important case on the question of UM rejection is Kimbrell v. Great American Ins. Co., 420 So.2d 1086, *441 1088 (Fla. 1982), in which our Supreme Court held that "the question of whether an insured has knowingly rejected uninsured motorist coverage ... is an issue to be decided by the trier of the fact." Kimbrell, as it specifically noted, did not involve a written rejection and we deem that to be an important distinction.
This question has been considered in several other instances. Notably, in Zisook v. State Farm Mutual Automobile Insurance Co., 440 So.2d 452 (Fla. 3d DCA 1983), the Third District appeared to recede from Alejano and Lopez holding that an "informed" rejection of UM coverage cannot, without extrinsic evidence, be implied from the insured's signature on an application. Most recently this court issued a per curiam affirmed, on the authority of, decision which, from a reading of the dissent, would appear to run contra to that which we now hold. See Sentry Insurance Company v. Ellison, 474 So.2d 2 (Fla. 4th DCA 1985). However, upon reflection it would appear the Sentry result was in error and we now recede from it and certify the issue to the Supreme Court.
To best describe the application in this case we reproduce it in toto from the record as follows:

*442 It should be noted that this particular application does not merely involve selection of UM in a lesser amount. Reference to paragraph 5, as reproduced above, shows that no UM was desired, nor was the minimum $100 premium paid and the dollar amount required to get such coverage was specifically lined out. It is not so much paragraph 5 of the application which compels us to this decision, it is paragraph numbered 8. This latter paragraph, set forth throughout in bold type, carries with it the requirement of a second signature in addition to the signature and verification provided for in paragraph 6.
The language of this final paragraph, following its underlined premise, is unmistakable and unequivocal and it requires the insured's separate signature. It is a plainly worded rejection of UM coverage. If such a written rejection is not valid upon signature, one is left helpless to suggest how else an insurer can protect itself from providing coverage, for which it receives no premiums, unless the signature were to be sworn to acknowledging that the paragraph had been read and understood. In the case before us, the insured does not deny her signature, but explains that her rejection was not knowingly made because she was distracted by the simultaneous purchase of a motorcycle helmet, did not pay much attention, and is not sophisticated in insurance matters. None of these reasons appear to us to be supportable; otherwise, as a practical matter, every written rejection would be worthless in that it would be obviated by convenient oral testimony to fit the circumstances and the case law.
We must look to the purpose of the statute to find the answer. As the court in Kimbrell remarked, Section 627.727, Florida Statutes (1983), embodies a public policy for the protection of insureds so that UM coverage will be available under all automobile insurance policies unless rejected by the insured. 420 So.2d at 1088. It is obviously not intended that the insured is to always have UM coverage without paying for it, otherwise there would be no point in having a statutory provision outlining how to reject it. As the Kimbrell court also pointed out, that rejection is not mandated in any particular fashion and need not even be in writing. However, it must be knowing. Common sense dictates that the best and most common method of preventing a contracting party from excusing herself from being bound by claiming she did not know that she was rejecting UM coverage is to have her sign a clearly worded statement that she did reject it. It is axiomatic that absent unusual circumstances, not present under the facts of the case now before us, one cannot claim ignorance of the contents of a written instrument which one signs. Stonebraker v. Reliance Life Ins. Co. of Pittsburgh, 123 Fla. 244, 166 So. 583 (1936) and John Deere Industrial Equipment Co. v. Roberts, 362 So.2d 65 (Fla. 1st DCA 1978).
Our conclusion as to legislative intent is bolstered by a recent amendment to the statute in which the pertinent portion of Section 627.727(1) was amended to provide that the rejection of UM is to be made on a form "approved by the insurance commissioner." See Ch. 85-62, § 16, Laws of Fla. True, the language in the amended statute is not quite the same as the language of the rejection paragraph in the matter at bar.[1] However, it is equally as clear. We note under the amendment that the insured's signature "conclusively presume[s] there was an informed knowing rejection." *443 Indeed we agree it should and we are cognizant of the revisor's comment to this statutory amendment which makes it clear no change in the law was intended when it was said:
Revisor's note  Amended to improve clarity and facilitate correct interpretation.
Notwithstanding, we acknowledge conflict and confusion. Particularly we are perturbed by the language employed towards the end of Kimbrell whereat the court noted: "The fact that the insurer maintains in its files evidence of an offer and a selection is relevant but not crucial to a finding that a knowing selection was made." 420 So.2d at 1089.
Accordingly, deeming the matter to be of great public importance, we hereby certify the following question to our Supreme Court:
DOES A SECOND SIGNATURE ON AN INSURANCE APPLICATION AFFIXED BELOW A SEPARATE PARAGRAPH REJECTING UM COVERAGE WRITTEN IN BOLD PRINT AND IN PLAIN AND UNAMBIGUOUS LANGUAGE, CONCLUSIVELY DEMONSTRATE A KNOWING REJECTION ABSENT EXTRAORDINARY CIRCUMSTANCES NOT DEEMED TO BE PRESENT IN THE CASE AT BAR?
REVERSED AND REMANDED IN ACCORDANCE HEREWITH.
HERSEY, C.J., and DOWNEY, ANSTEAD, GLICKSTEIN, HURLEY, DELL and WALDEN, JJ., concur.
NOTES
[1] We note the amendment calls for the rejection form to be in 12 point bold type. Whether the instant rejection satisfies this technicality is not considered to be controlling in the case at bar which is governed by the law prior to the amendment.