COLBATH, WALTER N., Jr., Associate Judge.
Hartford Insurance Company of the Southeast, defendant below, appeals the trial court’s entry of final judgment in favor of Jodi Ann Pearson, plaintiff below. Two points were raised on appeal, one of which is moot having been amicably resolved by the parties. The remaining point on appeal is stated as follows:
*1191 WHETHER THE TRIAL COURT ERRED IN HOLDING AS A MATTER OF LAW THAT APPELLEE’S PARENTS HAD NOT MADE A KNOWING REJECTION OF HIGHER UNINSURED MOTORIST LIMITS UNDER THE POLICY OF AUTOMOBILE INSURANCE WITH APPELLANT.
For the following reasons we answer this question in the negative, and affirm the trial court’s judgment.
The operative facts are as follows. Ap-pellee was a beneficiary under her parents’ automobile insurance policy with appellant which provided for a total of $600,000 in bodily injury liability coverage and $40,000 in uninsured motorist (UM) coverage. Ap-pellee was involved in an automobile accident on July 2,1983, in which she sustained serious bodily injuries which led her to file a UM claim against appellant for those injuries and an action for declaratory relief seeking a determination that she was entitled to UM coverage equal to the bodily injury coverage of the policy.
Since 1976 the Pearsons had carried bodily injury limits of $100,000/300,00 and UM limits of $15,000/30,000 through their insurance agent in Pennsylvania. In May or June of 1981, the Pearsons’ Pennsylvania carrier advised them to obtain insurance in Florida where they had become permanent residents. Immediately thereafter, Mr. Pearson approached the Schlitt Agency and spoke to Lorna McConnell, an agent with that firm. Mr. Pearson and Ms. McConnell were the only witnesses at the hearing on the declaratory relief claim.
Mr. Pearson’s testimony reveals that he was a 57 year-old vice-president of a contracting corporation for which he supervised large construction projects. He did not complete high school, had only a rudimentary knowledge of insurance and relied on the advice of appellant’s agent. When he first met with Ms. McConnell, he informed her that he wanted “the most coverage for the best price.” McConnell advised him that in addition to liability coverage Florida law required that he purchase uninsured motorist insurance, to which he replied, “fine, if you have to have it, there’s not much I can do, take it.”
Mr. Pearson further testified that McConnell filled out two application forms, which were subsequently executed by him and his wife. The first application was for insurance with another company which, for reasons not germane to this opinion, was canceled within a month or two. McConnell then filled out an application for coverage with Hartford, and asked Mr. Pearson to come by her office and pick it up. Mr. Pearson testified that when he picked up the second application he spent about fifteen minutes with McConnell but had no conversation with her other than to briefly “pass the time of day.” Thereafter, he took the second application home and discussed it with his wife, after which they signed and returned it to McConnell. He finally testified that he never asked for an explanation of uninsured motorist coverage nor was he given one other than as stated above.
On the other hand, McConnell testified that she had been an insurance agent for nine years and that, while she could not recall the specifics of her conversation with Mr. Pearson during either the initial or subsequent visit, it was her routine practice to go over the application item by item with the applicant. She recalled speaking with Mr. Pearson for twenty to thirty minutes regarding each of the two insurance applications. Ms. McConnell acknowledged that she filled out both applications, and stated that she recalled advising Pearson that he could obtain uninsured motorist coverage equal to his bodily insurance liability limits but that there would be an additional premium for the higher coverage. McConnell also stated at one point during her testimony that she could not remember exactly what she told Mr. Pearson about the uninsured motorist coverage although she always advises applicants of their entitlement to the higher limits. Fi *1192 nally, she testified that her recollection was that Mr. Pearson wanted high bodily injury liability limits but otherwise was interested in saving money, and that he never asked for an explanation concerning uninsured motorist insurance.
Section 627.727(1), Florida Statutes (Supp.1980), states that all automobile liability policies shall provide uninsured motorist coverage except “to the extent that any insured named in the policy shall reject the coverage.” A rejection by an insured of UM limits equal to his liability limits and a selection of lower UM coverage must be knowingly and informedly made. Kimbrell v. Great American Insurance Co., 420 So.2d 1086 (Fla.1982); Realin v. State Farm Fire and Casualty Co., 418 So.2d 431 (Fla. 3d DCA 1982); Travelers Insurance Co. v. Spencer, 397 So.2d 358 (Fla. 1st DCA 1981). To meet this requirement the insured must be made aware of his options, including the availability of UM coverage in an amount equal to his liability limits. Tarlton v. Dixie Insurance Co., 450 So.2d 300 (Fla. 2d DCA 1984); Lane v. Waste Management, Inc., 432, So.2d 70 (Fla. 4th DCA), rev. denied, 441 So.2d 633 (Fla.1983). Whether an insured has made an effective rejection under the above-cited authority is a fact question in which the insurer has the burden of proof. See Lane.
The appellant cites a plethora of authority for the following legal propositions: The statute does not require a written rejection nor does it mandate rejection in a specific form; . neither does it require that such rejection be knowingly made. Kimbrell v. Great American Insurance Co., 420 So.2d 1086 (Fla.1982). An insurance carrier has no duty to explain uninsured motorist coverage unless the applicant asks for an explanation. Realin v. State Farm Fire and Casualty Co., 418 So.2d 431 (Fla. 3d DCA 1982). Finally, contracting adults are presumed to understand the agreements they sign. Lancaster Oil Company v. Hartford Accident and Indemnity Company, 486 F.Supp. 399 (N.D.Fla.1980).
Recently this court, sitting en banc, reversed the trial court's denial of the insurance company’s motion for a directed verdict where a jury had found that the insureds had not made an informed rejection of UM coverage. Bankers Ins. Co. v. Vasquez, 483 So.2d 440 (Fla. 4th DCA 1985). However, this court’s opinion in Vasquez is clearly distinguishable from the present case, for that, in Vasquez the insureds were required to sign a separate disclaimer contained in the policy specifically rejecting UM coverage equal to bodily Injury liability. In the instant case the insureds were merely given an application containing, along with a number of other matters unrelated to UM coverage, four choices with regard to UM limits:
A. A limit of liability equal to the Financial Responsibility Limits of Liability of Florida (this is the minimum amount available if coverage is provided).
B. A limit of liability equal to the Bodily Injury Limit of Liability of my policy.*
C. At the limit of liability indicated
D.I reject Protection Against Uninsured Motorists Coverage.
The choice in the case sub judice was option A and, as stated above, that selection had already been made by Ms. McConnell at the time the Pearsons received the application.
Contemporaneously herewith this court has filed its opinion in Nationwide Mutual Fire Insurance Company v. Kauffman, Supreme Court, 495 So.2d 1100 (Ala.1986) 495 So.2d 1184 (Fla. 4th DCA 1986). In that case, as in Vasquez, this court found in favor of the insurance company, concluding that “[i]t is difficult to see what more an insurance agent or an insurer could have done, within practical limits and in view of the statutory requirements applicable at the time, to evidence its compliance with the mandate of the statute.” The facts in Kauffman, while at first blush quite similar to the present facts, are in our *1193 opinion distinguishable. The majority in Kauffman found that Nationwide’s agent was very clear and precise in his testimony as to what transpired at the time the application was filled out, whereas here we have considerable equivocation superimposed over Ms. McConnell’s somewhat hazy memory. In addition, in Kauffman, the policy in question contained only three alternatives or options from which the applicant was to select. However, one of the options available to the applicant in Kauffman is in our opinion somewhat of a combination of the negative of option B and of option C in the instant case, i.e.,
I DESIRE UNINSURED MOTORIST COVERAGE OF _ WHICH ARE LOWER THAN MY BODILY INJURY LIMITS. It is readily apparent that the wording in Kauffman informs the applicants that they are not only rejecting maximum UM coverage, but in addition are knowingly selecting lower limits and are required to fill in (presumably in their own hand) the lower limits they desire. The choice specifically requires not only placing a check mark in the applicable box but thereafter definitive action on the part of the applicant. In Vasquez the definitive action was a signature immediately below a plainly worded disclaimer, while in Kauffman it is the writing in by the insureds of the selected lower limits.
There is no such requirement in filling out option A of the application in this case which would draw to the insureds’ attention that they were making an informed rejection of the maximum limits and a conscious, meaningful and knowing selection of lower limits. While the question here is a close one, we conclude in light of all the evidence that the judgment of the lower court sitting as the trier of fact should not be disturbed. Accordingly, in view of the record presented to this court and because of the clear distinctions of the facts and the form of the application here with those in both Vasquez and Kauffman, this court does hereby affirm the lower court’s judgment.
AFFIRMED.
DELL and GUNTHER, JJ., concur.

 You may purchase limits up to 100/300 or 300,000 regardless of your Bodily Injury Limit of Liability