516 So.2d 1024 (1987)
Brian AUGER, Appellant,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Appellee.
No. 87-2.
District Court of Appeal of Florida, Second District.
December 4, 1987.
Rehearing Denied December 29, 1987.
John Golding and Eduardo R. Latour of Yanchuck, Thompson, Young, Berman & Latour, P.A., Tarpon Springs, for appellant.
Bruce D. Austin of Kaleel & Kaleel, P.A., St. Petersburg, for appellee.
RYDER, Judge.
Today we again write about an area of law that has been often litigated and is rapidly evolving: an insured's knowing rejection of higher limits of uninsured motorist coverage. In 1961, the legislature enacted a law requiring automobile insurance issued in the state of Florida to offer coverage to persons injured by "owners or operators of uninsured motor vehicles." Ch. 61-175, § 1, Laws of Fla. Since its enactment, the uninsured motorist statute (now section 627.727, Florida Statutes (1985)) has been amended by the legislature over twenty times. The burden of proving that an offer of coverage had been made fell upon the same party that was required to make the offer: the insurance company. Courts have been called upon to determine the admissibility of evidence of a knowing rejection, Nationwide Mutual Insurance Co. *1025 v. Jones, 414 So.2d 1169 (Fla. 5th DCA 1982), as well as the sufficiency of evidence in support of, or in opposition to knowing rejection. See, e.g., Nationwide Mutual Fire Insurance Co. v. Kauffman, 495 So.2d 1184 (Fla. 4th DCA 1986) and Hartford Insurance Co. of Southeast v. Pearson, 495 So.2d 1190 (Fla. 4th DCA 1986).
Due to the volume of customers a given insurance agent sees daily, monthly and yearly, the cases reflect the fact that occasionally it is somewhat difficult for an insurance company to meet its burden in proving that any specific insured knowingly rejected higher limits of uninsured motorist coverage, absent a "paper trail." See, e.g., Travelers Insurance Co. v. Spencer, 397 So.2d 358 (Fla. 1st DCA 1981); American Motorists Insurance v. Weingarten, 355 So.2d 821 (Fla. 1st DCA 1978).[1] In 1984, in an apparent attempt to ease the burden placed upon the insurance companies, the legislature enacted an amendment to the uninsured motorist statute. Ch. 84-41, § 1, Laws of Fla. This amendment became effective October 1, 1984 and added, in pertinent part, the following language:
The rejection or selection of lower limits shall be on a form approved by the Insurance Commissioner. The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured it shall be a conclusive presumption that there was an informed, knowing rejection of coverage or election of lower limits.
The amendment only applied to "new and renewal policies with an effective date on or after" its effective date. It did not affect the indefinite number of policies entered into previously. Two of those policies are the subject of the case now before us.
Appellant filed a petition for declaratory relief claiming coverage under his mother's and his sister's State Farm automobile insurance policy. The petition alleged that appellant was entitled to coverage in the amounts equal to the bodily injury limits because neither insured had made a knowing rejection of those higher limits.
The facts of this case are fairly straightforward. On November 3, 1982, appellant was injured in a motorcycle/automobile accident. At the time of the accident, appellant was residing in the same household as his mother, Phyllis Auger, and his sister, Marcia Auger. Both Phyllis and Marcia had purchased an automobile insurance policy issued by appellee. Phyllis had visited the office of State Farm agent Wayne O'Brien and signed an application for the auto insurance on July 3, 1980. She testified at trial that she requested "full coverage" at the initial meeting, but was never offered any options on uninsured motorist coverage. Neither was she shown any rate books, documents or brochures on the coverage. Cost was no concern, she said. Phyllis accurately described the layout of the office. She also specifically described the clothing Mr. O'Brien was wearing, and the conduct of the conversation: Mr. O'Brien was the only person in the office because the meeting occurred during lunch, and he repeatedly excused himself to answer the telephone. Phyllis testified that O'Brien was writing down the application information on a separate piece of paper, but she did sign the application before she left. She recalled that her signature was the only marks she made on the application.
Marcia, appellant's sister, signed an automobile insurance application from Mr. O'Brien's office on December 23, 1980. *1026 Marcia testified that Phyllis accompanied her, and again no explanation of coverages or costs were ever provided to her. According to her testimony, no rate books, documents or brochures were shown to her and she was not told she could obtain uninsured motorist coverage in the same amount as her liability coverage. She also stated she made no writings on the application other than her signature. Phyllis corroborated Marcia's testimony.
Both policies provided uninsured motorist coverage limits in the amount of $15,000/30,000. An "x" was in the box next to "lower than BI" (bodily injury) on both applications. "BI" limits were $100,000/300,000 on both applications.
Mr. O'Brien testified that he had no specific recollection of meeting with Phyllis Auger, and testified that his office processes approximately 500 automobile insurance applications per year. He said most of the handwriting on Phyllis' application was that of his secretary, Kay Wells, and, under normal office procedure, the person meeting with the insured would usually be the same person who filled out the application. He agreed that his handwriting was on Marcia's application, but had no independent recollection of meeting with Marcia. Mr. O'Brien then described the normal office procedure when meeting with a new customer. Needless to say, this procedure included an offer of uninsured motorist coverage equal to that of bodily injury. Mr. O'Brien testified on cross-examination that "full coverage" to him meant every different type of coverage, not the maximum limits on those types. He admitted that an application for every type of coverage, including medical payments coverage of $10,000, major road service, loss of use and auto death indemnity, "evidence[s] a person that is not attempting to cut their cost[s]." Both applications had every type of coverage.
Kay Wells, O'Brien's secretary at the time the applications were taken, recognized her handwriting on Phyllis Auger's application, but could not recall meeting with Phyllis. Based upon the fact her handwriting was on the application, Ms. Wells testified she took Phyllis' application. She then described the normal office procedure in 1980. Both Ms. Wells and Mr. O'Brien testified that higher premiums would mean higher commissions.
The trial court entered a final judgment in favor of appellee. We reverse. Appellee correctly argues that a trial court's determination of a factual issue should not be disturbed by a reviewing court when the determination is supported by substantial, competent evidence. See Kimbrell v. Great American Insurance Co., 420 So.2d 1086, 1089 (Fla. 1982). Appellee argues that this standard on review is especially appropriate when there are conflicts in the evidence, and points to the conflicting testimony as to whether Ms. Wells or Mr. O'Brien prepared Phyllis' application. This conflict in the evidence does not bear upon the issue of whether there is substantial, competent evidence to support a finding that both Phyllis Auger and Marcia Auger knowingly rejected the higher coverage. As stated above, the burden of proof of the insured's knowing rejection of higher uninsured motorist coverage limits is upon the insurance company. Government Employees Insurance Co. v. Mitchell, 433 So.2d 579 (Fla. 2d DCA 1983). It has been consistently held that general office procedure, standing alone, is insufficient to support a finding of a knowing rejection: "the statute's requirements are not met if the agent's knowledge of rejection is founded only upon his general, routine office practice, and not upon an independent recollection of a specific rejection." Spencer, 397 So.2d at 361. See also Weingarten, 355 So.2d 821; Bernstein v. Liberty Mutual Insurance Co., 294 So.2d 63, 64 (Fla. 3d DCA 1974). After careful review of the record in the case sub judice, we can find no evidence, other than general office practice, in support of the trial court's decision, and accordingly, we reverse the trial court's final judgment in favor of appellee. We are not unaware of the considerable evidentiary problems confronted by appellee caused by the particular facts of this case.
Nevertheless, at the time the applications sub judice were taken, the law clearly required that a knowing rejection of higher uninsured motorist limits by the insured be proven by the insurance company by more *1027 than evidence of general office practice. Our decision of Jackson v. State Farm Fire and Casualty Co., 469 So.2d 191 (Fla. 2d DCA 1985) is distinguishable because the insured's widow did not present any evidence that the insured was not offered uninsured motorist coverage, and the insurance company produced a written rejection signed by the insured.
Appellee urges upon us, as virtually identical in their facts, the cases of Scatigno v. State Farm Mutual Automobile Insurance Co., 425 So.2d 217 (Fla. 2d DCA 1983) and Jones, 414 So.2d 1169. We do not agree. One of the facts clearly relied upon by this court in Scatigno was the fact that one option box for uninsured motorist coverage had been checked and scratched out, and another box checked. An agency employee testified that this would have been a correction based on the insured's desired coverage. We reversed and remanded for a new trial because the trial court excluded testimony that contradicted testimony admitted by the trial court that the change was made at the insured's direction. In Jones, the agent testified that he remembered the transaction in question, but not the specific language of the conversation. That testimony was evidence that the unfailing practice of the agent was followed in that specific instance. Jones, 414 So.2d at 1171. In the case sub judice, neither the agent nor his secretary remember ever seeing either Phyllis or Marcia Auger. In fact, both admitted not recognizing the insureds in court.
We hold that the trial court erred in entering a final judgment for appellee. We reverse and remand for entry of a final declaratory judgment ruling that appellant is entitled to uninsured motorist coverage equal to that of the policies' bodily injury coverage.
Reversed and remanded with instructions.
SCHEB, A.C.J., and THREADGILL, J., concur.
NOTES
[1] We do note it is the carrier's option to maintain or not to maintain more accurate records of sales transactions.