495 So.2d 1184 (1986)
NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Appellant,
v.
Frank W. Kauffman, Appellee.
Nos. 84-2540, 85-378.
District Court of Appeal of Florida, Fourth District.
September 17, 1986.
On Rehearing October 31, 1986.
*1186 David F. Crow of Paxton, Crow and Bragg, P.A., West Palm Beach, for appellant.
Montgomery, Searcy & Denney and Edna L. Caruso of Edna L. Caruso, P.A., West Palm Beach, for appellee.
HERSEY, Chief Judge.
This appeal concerns the frequently encountered issue of whether there was an informed rejection of uninsured motorist coverage. To be more precise, the issue is whether the insureds (appellee's parents) made an informed selection of limits of uninsured motorist coverage lower than those of the bodily injury liability coverage contained in the insurance policy issued by appellant. Appeal by the insurer is predicated upon the premise that there was in fact an informed rejection and, in any event, the facts came within an exclusion from coverage contained in the policy despite findings to the contrary by the trial court.
In February 1979 F.J. Kauffman and his wife, Archa Mae Kauffman, having recently moved to Florida, met with their insurance agent, Ronald Gralin, to discuss automobile insurance. As a result of that meeting Nationwide Mutual Fire Insurance Company issued a policy in April of 1979 providing coverage of $100,000/$300,000 bodily injury liability and $10,000/$20,000 uninsured motorist insurance on a 1977 Ford Pinto automobile.
The Kauffmans' son, appellee Frank W. Kauffman, who resided in their household, was injured in an accident on January 5, 1983, while driving an automobile owned and insured by him.
On January 28, subsequent to his son's accident, F.J. Kauffman executed a form entitled Uninsured Motorist Coverage Rejection Statement which requested UMC limits of $100,000/$300,000 under his Nationwide policy.
In February Nationwide filed its complaint for declaratory relief. It alleged, inter alia, that Frank W. Kauffman had accepted a payment of $10,000, the limit of liability coverage available to the driver of the other automobile involved in the collision. It also alleged that demand had been made for arbitration by Frank W. Kauffman seeking $100,000 in uninsured motorist benefits under his father's policy. By way of defense against this claim Nationwide alleged that an informed selection of coverage in the amount of $10,000/$20,000 had been made, and that an exclusion in the policy language precluded recovery in any event.
Both lines of defense were rejected by the trial court, and a declaratory judgment was entered to the effect that uninsured motorist coverage was available to the extent of $100,000/$300,000 (the same limits as the bodily injury liability coverage), based upon the absence of proof of an informed rejection. The insurance company appeals.
The duty of an insurance company to make available uninsured motorist insurance with limits not less than the limits of bodily injury liability insurance purchased by the insured is based upon statute in Florida. Section 627.727, Florida Statutes (1985), requires that such insurance be made available unless rejected by any named insured.
By virtue of the existence of the duty, it is not enough to show that the insured rejected uninsured motorist coverage entirely or selected limits lower than the bodily injury liability limits of the policy for the insurance company to avoid liability. There must have been an "informed" rejection. Realin v. State Farm Fire & Casualty Co., 418 So.2d 431 (Fla. 3d DCA 1982). A rejection may be characterized as "informed" where the insured was advised by the insurer or otherwise knew that coverage was available with limits equal to those for bodily injury liability contained in the policy and either rejected uninsured motorist insurance entirely or selected lower limits of coverage. Kimbrell v. Great American Ins. Co., 420 So.2d 1086 (Fla. 1982); Lane v. Waste Management, Inc., 432 So.2d 70 (Fla. 4th *1187 DCA), rev. denied, 441 So.2d 633 (Fla. 1983). In the absence of substantial competent evidence of an informed rejection, the insured will be deemed to have uninsured motorist insurance with the same limits as the bodily injury liability coverage in the policy. First State Insurance Co. v. Stubbs, 418 So.2d 1114 (Fla. 4th DCA 1982), rev. denied, 426 So.2d 26, 29 (Fla. 1983).
Whether there was an informed rejection in a particular case is a question of fact. Kimbrell, 420 So.2d at 1086. The burden of proof to show that there was a rejection and that it was an informed rejection rests with the insurer. General Accident Fire & Life Assurance Corp. v. MacKenzie, 410 So.2d 558 (Fla. 4th DCA), rev. denied, 419 So.2d 1197 (Fla. 1982). However, no particular form of rejection is required nor is there a requirement that it be in writing. Travelers Ins. Co. v. Spencer, 397 So.2d 358 (Fla. 1st DCA 1981).
The signature of the insured on an application for insurance in which uninsured motorist coverage is rejected or which requests lower limits than the bodily injury liability limits is not, in and of itself, sufficient to prove an informed rejection. Nationwide Mutual Ins. Co. v. Jones, 414 So.2d 1169 (Fla. 5th DCA 1982). It is obviously evidence of a rejection but not probative of whether the rejection was "informed." Nor is evidence that the insurance agent made a general practice of informing clients of the availability of uninsured motorist insurance as provided by the statute, without more, sufficient to support a finding of an informed rejection. American Motorists Ins. Co. v. Weingarten, 355 So.2d 821 (Fla. 1st DCA 1978); Spencer, 397 So.2d at 361.
Conversely, where the application or rejection form itself contains a clear explanation of the insured's right to uninsured motorist coverage within the limits required by the statute, "an applicant may not contest his signed rejection of coverage by contending that he signed the rejection without reading it," General Ins. Co. of Florida v. Sutton, 396 So.2d 855, 856 (Fla. 3d DCA 1981), unless he was prevented from reading it. Alejano v. Hartford Accident and Indemnity Co., 378 So.2d 104 (Fla. 3d DCA 1979). Absent exigent circumstances the insured is deemed to be bound by his signature on an informing application or rejection form. Bankers Ins. Co. v. Vasquez, 483 So.2d 440 (Fla. 4th DCA 1985).
Although an insurer is required by statute to make uninsured motorist coverage available, the variations of the statute applicable to the cases so far discussed impose no duty on the insurer to enlighten the insured concerning the availability of coverage. "[A]n insurer has no duty to explain uninsured motorist coverage to an insurance applicant unless asked... ." Realin, 418 So.2d at 432. Whether the insurer made an informing offer, therefore, is probative but not conclusive of the issue of whether there was an informed rejection. This is so because the insured may have become aware of his right to coverage from sources other than the insurer. American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206 (Fla. 1983). Speaking to this issue in an earlier case the supreme court held: "Similarly, the fact that the insurer maintains in its files evidence of an offer and a selection is relevant but not crucial to a finding that a knowing selection was made." Kimbrell, 420 So.2d at 1089. Some courts have interpreted this to mean that evidence of an offer and selection does not conclusively establish that an informed rejection/selection was made. With respect, we suggest that this is a misinterpretation. Absent some extraordinary circumstance, evidence of an offer that complies with the statute, together with an executed rejection or selection form, should be sufficient on the issue to carry the day for the insurer. Our understanding of the language in Kimbrell is that the insurer may be able to establish that there was an informed rejection/selection even in the absence of evidence in its files that it made an informing offer. In other words that document is not "crucial" or absolutely essential to such a finding.
*1188 In the present case the question, answered in the trial court adversely to the insurer, is whether there was an informed selection of limits of uninsured motorist insurance lower than the coverage for bodily injury liability.
The evidence in support of the holding below consisted of the testimony of F.J. and Archa Mae Kauffman concerning their meeting with the insurance agent, Gralin, in February 1979. Mr. Kauffman testified that Gralin never brought up the subject of uninsured motorist coverage. Mrs. Kauffman testified: "I do not remember [uninsured motorist coverage] being discussed at all." She also testified: "We wanted to know what we were buying and what we were getting for the money; ... ." However, later on in her testimony she makes this statement: "We didn't ask about no price or anything. We weren't interested in that." Her testimony as to how long the meeting lasted was: "We were there for a long time."
Evidence in support of the insurer's position that there was an informed selection of lower than maximum limits consisted primarily of the agent's testimony.
Gralin testified, first, from his recollection of the February 1979 meeting with the Kauffmans. He specifically recalled explaining to them that they were entitled to obtain uninsured motorist coverage up to the limits of their bodily injury liability coverage. He further testified that the cost of premiums at various levels was discussed "and the decision was to stay with what he previously had, which was one  ten/twenty."
Gralin next testified that his standard office procedure in February of 1979 was to discuss uninsured motorist insurance last and to explain its availability and cost and the options open to an insured. He also pointed out that the final item on the application for insurance is number 11 pertaining to uninsured motorist coverage. While this portion of the application to be signed by the applicant contains a recital that uninsured motorist coverage has been offered, it does not indicate that limits equal to the bodily injury liability coverage have been offered. One of the three alternatives available to an applicant, actually the final one, states:
[] I DESIRE UNINSURED MOTORIST COVERAGE OF ____ WHICH ARE LOWER THAN MY BODILY INJURY LIMITS.
An "x" was placed in this box and the figures 10/20 were placed in the blank. The language used here is certainly sufficient evidence of some relationship between the two types of coverage to put a reasonable person on inquiry, although it is not sufficient, without more, to establish that the statute has been complied with.
It is also of some slight significance that, twenty-three days after the accident, the insured increased his uninsured motorist coverage to $100,000/$300,000.
The trier of fact rejected portions of Gralin's testimony, but not all of it, without elucidating what was accepted and what rejected. Based on what remained and the additional evidence, it was held that the insurer failed to meet its burden of proof.
This was a difficult case, and we hesitate to disturb a finding based upon questions of fact. However, the Kauffmans are obviously interested parties, and their interest is financial. F.J. Kauffman says the subject of uninsured motorist coverage never came up. His wife does not remember. They wanted to know what they were getting for their money and yet didn't inquire about coverages, weren't advised about coverages and were not at all interested in price.
Gralin recalls explaining the availability of uninsured motorist coverage and also testified to a routine office practice that included uninsured motorist coverage disclosure. The signed application form contained a reference to the availability of this coverage, and the selected option is an acknowledgment by the applicant that the selected limits are lower than bodily injury liability coverage.
It is difficult to see what more an insurance agent or an insurer could have done, *1189 within practical limits and in view of the statutory requirements applicable at that time, to evidence its compliance with the mandate of the statute. Hindsight offers splendid suggestions embroidered upon by self-interest. However, the common sense of everyday business dealings dictates simple and understandable procedures which are also economically feasible. Such a procedure was employed here as demonstrated by a preponderance of the credible evidence. We therefore reverse the holding that there was not an informed rejection.
Appellant-insurer's additional point on appeal is directed to the trial court's finding that those provisions of the policy which, if interpreted to exclude from coverage appellee, Frank W. Kauffman, because he was a relative living in the household of the named insured but operating an owned vehicle not listed in the policy, are contrary to public policy.
In Mullis v. State Farm Mutual Automobile Ins. Co., 252 So.2d 229 (Fla. 1971), the supreme court held invalid as against the public policy expressed by the applicable statutes, an exclusion from uninsured motorist coverage of an insured while occupying a vehicle owned by the named insured or a resident of his household if such vehicle was not an insured automobile. Subsequently, based upon the fact that the underlying statute had been amended, the supreme court changed its position with reference to a similar exclusion in New Hampshire Insurance Group v. Harbach, 439 So.2d 1383 (Fla. 1983).
Coming full circle, the 1976 version of section 627.4132, Florida Statutes, which furnished the underpinnings for the Harbach opinion, was amended in 1980 to delete reference to uninsured motorist coverage. The third district, in an opinion with which we agree, determined that after the amendment the sole exception to the requirement that every insurance policy contain uninsured motorist coverage is "where any insured named in the policy shall reject the coverage." Automobile Insurance Co. of Hartford v. Beem, 469 So.2d 138, 141 (Fla. 3d DCA 1985). We therefore affirm this aspect of the final judgment.
In summary, we hold that the amount of uninsured motorist insurance available to appellee, Frank W. Kauffman, was $10,000/$20,000.
As we did in Bankers Insurance Company v. Vasquez, we deem the matter to be of great public importance in those potential cases arising before revision of the statute and we hereby certify the following question:
DOES A SECOND SIGNATURE ON AN INSURANCE APPLICATION AFFIXED BELOW A SEPARATE PARAGRAPH REJECTING UM COVERAGE WRITTEN IN BOLD PRINT AND IN PLAIN AND UNAMBIGUOUS LANGUAGE, CONCLUSIVELY DEMONSTRATE A KNOWING REJECTION ABSENT EXTRAORDINARY CIRCUMSTANCES NOT DEEMED TO BE PRESENT IN THE CASE AT BAR?
We therefore affirm in part; reverse in part; and remand for such further proceedings as may be appropriate.
DELL, J., concurs.
LETTS, J., concurs specially with opinion.
LETTS, Judge, specially concurring.
I agree with the decision to reverse, specifically because of the "x" placed in the box and the 10/20 figures placed in the blank space. These two items, filled out on the insurance application form, lead me to believe that reversal is mandated by our en banc decision in Bankers Insurance Company v. Vasquez, 483 So.2d 440 (Fla. 4th DCA 1985).

ORDER ON REHEARING
We grant appellant's motion for rehearing to the extent of amending our previous opinion (Nationwide Mutual Fire Insurance Company v. Kauffman, see page 1189) to include the following:
The lower court's award of attorney's fees and costs, predicated upon its judgment *1190 in favor of the insured and against the carrier, is reversed.