505 So.2d 1364 (1987)
Helen RIGGSBY and Roy Riggsby, Individually; Helen Riggsby, As Personal Representative of the Estate of Melissa Riggsby; Helen Riggsby As Legal Guardian of the Property of Christa Riggsby; Helen Riggsby and, Roy Riggsby As Natural Guardians of Christa Riggsby, Appellants,
v.
WEST AMERICAN INSURANCE COMPANY, a Foreign Corporation, and Capital Casualty, Inc., D/B/a Capital-Doxsee Insurance Agency and Cynthia Ann Porter, Appellees.
No. BN-76.
District Court of Appeal of Florida, First District.
April 10, 1987.
*1365 Daniel W. Dobbins of Eubanks, Dobbins & Barrett, Tallahassee, for appellants.
Patricia Guilday of Fuller & Johnson, Tallahassee, for appellee West American Ins. Co.
James A. Dixon, Jr. of Dixon, Blanton, Shelley & Adams, Tallahassee, for Appellees Capital Cas., Inc. and Cynthia Ann Porter.
NIMMONS, Judge.
This is an appeal from a summary judgment in favor of appellee, West American Insurance Company ("West American") in an action for declaratory relief brought by the appellants to determine the amount of uninsured motorist (UM) coverage under a policy issued by West American. We reverse.
On February 11, 1984, Melissa Riggsby and Christa Riggsby were passengers in an uninsured pick-up truck owned and driven by Gregory Swenson. On that date, the Swenson truck collided with another motor vehicle resulting in injuries to Christa and the death of Melissa. At the time of the accident, Melissa and Christa were residents of the household of their father and mother, Roy and Helen Riggsby, and were insured under a policy of insurance issued by West American to Roy and Helen covering two vehicles.
Appellants sued appellee, West American, alleging that the deceased was insured for UM with coverage limits equal to the bodily injury limits of $25,000/$50,000. West American filed a motion for summary judgment arguing that the coverage extended only to the limits of $10,000/$20,000. The trial court granted the summary judgment, ruling in effect that UM coverage had been waived beyond the $10,000/$20,000 limits.[1]
The affidavits and depositions reveal the following facts viewed in a light most favorable to the non-moving party. In November, 1984, Helen Riggsby visited her insurance agent from whom she had earlier purchased automobile coverage which was coming up for renewal. The agent had recently changed jobs and no longer represented the carrier which had issued the prior policy. According to Mrs. Riggsby's deposition testimony, the only thing she and the agent discussed was that she was to obtain $25,000/$50,000 liability coverage (the same coverage as her prior policy) but the agent did not explain any of the coverages including uninsured motorist. She stated that she signed several blanks on an application form which was not explained *1366 to her and which she did not read. The agent, on the other hand, testified in her deposition that the coverages were explained to Mrs. Riggsby.
Mrs. Riggsby's signature appears on an "options form" in the application. The options form, which is reproduced in the appendix at the conclusion of this opinion, contains three sections, the first of which is entitled "Uninsured Motorist Coverage." It reads, in part, "Available Limits: a. $10,000/$20,000 or $20,000 limit; b. Limits higher than $10,000/$20,000 or $20,000 are available up to $100/300 or $300,000. If desired, indicate below." Below that statement is a statement reading, "I/we elect Uninsured Motorist Coverage with limit(s) of ____ and reject all other coverage and limitations." No figure was placed in the blank space. Below that is the undated signature of Helen Riggsby. According to the insurance policy, coverage commenced on December 1, 1983. Appellants assert that the above facts do not conclusively establish an informed rejection by Mrs. Riggsby of her statutory right to UM coverage in an amount equal to that of bodily injury liability coverage. We agree.
Section 627.727, Florida Statutes (1983) provides in pertinent part:[2]
(1) * * * However, the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy rejects the coverage in writing.
* * * * * *

*1367 (2)(a) The limits of uninsured motorist coverage shall be not less than the limits of bodily injury liability insurance purchased by the named insured, or such lower limit complying with the rating plan of the company as may be selected by the named insured....
It is not enough, in order for the insurance carrier to avoid liability, to show that the insured rejected UM coverage entirely or selected limits less than the policy's bodily injury liability limits. The insured must make an "informed" rejection. Kimbrell v. Great American Insurance Company, 420 So.2d 1086 (Fla. 1982); Nationwide Mutual Fire Insurance Company v. Kauffman, 495 So.2d 1184 (Fla. 4th DCA 1986). The burden of proof to show an informed rejection is on the insurer. General Accident Fire & Life Assurance Corporation, Ltd. v. MacKenzie, 410 So.2d 558 (Fla. 4th DCA 1982), rev. denied, 419 So.2d 1197 (Fla. 1982). After the 1982 legislative amendment,[3] the rejection has had to be in writing. Compare Travelers Insurance Company v. Spencer, 397 So.2d 358 (Fla. 1st DCA 1981) (no written rejection necessary because pre-1982 law was involved).
The question of whether an insured has knowingly rejected or, as in this case, knowingly selected coverage in an amount less than that which the insurer is required to make available, is an issue to be decided by the trier of fact. Kimbrell, supra 420 So.2d at 1088. However, recently the Supreme Court in Vasquez v. Bankers Insurance Company, 502 So.2d 894 (Fla. 1987), agreeing with the Fourth District's opinion,[4] held that the trial court should have directed a verdict in favor of the insurer where the evidence presented did not support the plaintiff's contention that the insured did not knowingly and voluntarily reject UM coverage. But one need only examine the insurance application involved in Vasquez[5] to see the material differences between Vasquez and the instant case.
In the Vasquez application, under block # 5 entitled "Coverage Information," coverage is shown for liability for bodily injury in the amounts of $10,000/$20,000 (the vehicle covered was a motorcycle). In the same section, under the heading "Uninsured Motorist," appears the statement "$10,000/20,000 uninsured motorist limits must be included in policy for $100 premium unless rejection is signed below." Thereafter, block # 8 of the application appears as follows:

REJECTION OF UNINSURED MOTORISTS (FAMILY PROTECTION) COVERAGE
The undersigned insured and the Bankers Insurance Company agree that in accordance with the provision of Florida Insurance Code, Section 627.727 Part X of Chapter 627, which permits the insured named in the policy to reject the uninsured motorists (family protection) coverage, the undersigned insured does hereby reject such coverage, being the coverage provided for the protection of persons insured under this policy who would be legally entitled to recover damages from the owner or operator of an uninsured motor vehicle because of bodily injury, sickness or disease, including death resulting therefrom.
 /s/ Timothy Moore
 Beverly Moore
The insured in Vasquez claimed at trial that she did not understand what she was signing when she affixed her name to the above rejection. The Supreme Court, in agreeing with the Fourth District, stated:
Mrs. Moore's signing of this unequivocal, unmistakable and plainly worded paragraph clearly establishes a knowing and willing rejection of uninsured motorist coverage.
502 So.2d at 896. Particularly significant to the instant case are the Supreme Court's observations that "the insurer did everything *1368 possible to notify [applicants] of the consequences of rejecting uninsured motorist coverage," that the application "specifically provided in paragraph five that uninsured motorist coverage must be included unless a rejection is signed below," and that the application "in paragraph eight ... explained the consequences of rejecting uninsured motorist coverage." 502 So.2d 896.
Unlike the situation in Vasquez, West American's form can hardly be said to be "unequivocal, unmistakable and plainly worded." The form contains no language informing the insured of the consequences of rejecting UM coverage or of selecting coverage in a lesser amount than that which the insurer was required to make available. In fact, at first glance the form appears to be incomplete since the insured has not filled in any amount in the blank for desired limits. It is only after studied examination of the form that one can discern the meaning of leaving that line blank. We hold that the signed form in the instant case is not conclusive of a knowing and informed selection of UM coverage in a lesser amount than that which must be made available under the statute.[6]See Hartford Insurance Company v. Pearson, 495 So.2d 1190 (Fla. 4th DCA 1986). The question is one for the trier of fact. Accordingly, the summary judgment is REVERSED.
WENTWORTH and WIGGINTON, JJ., concur.

APPENDIX
The following is the form contained in the West American application and signed by Mrs. Riggsby.

 (YOU MUST SELECT ONE OF THE THREE
 FOLLOWING OPTIONS)
1. UNINSURED MOTORISTS COVERAGE
[*] Uninsured Motorists Coverage applies to covered persons who
suffer bodily injuries, to the extent of their recovery rights
against those legally responsible. The limit purchased is reduced
by the amount of liability insurance carried by the person who is
liable.
AVAILABLE LIMITS:
a. $10,000/$20,000 or $20,000 Limit
b. Limits higher than $10,000/$20,000 or $20,000 are available up
to $100/300 or $300,000. If desired indicate below.
I/we elect Uninsured Motorist Coverage with limit(s) of _________
and reject all other coverage and limit options.
Date ________ Signed /s/ Helen Riggsby
Date ________ Signed _________________
2. EXCESS UNDERINSURED MOTORISTS COVERAGE
* Excess Underinsured Motorists Coverage provides the same
protection as Uninsured Motorist Coverage, except the limit of
coverage purchased is not reduced by the liability insurance
carried by the person who is liable.
AVAILABLE LIMITS:
a. $10,000/$20,000 or $20,000 Limit
b. Limits higher than $10,000/$20,000 or $20,000 are available up
to $100/300 or $300,000. If desired indicate below.
I/we elect Excess Underinsured Motorists Coverage with limit(s)
of __________ and reject all other coverage and limit options.
Date ________ Signed _____________
Date ________ Signed _____________
3. REJECTION OF BOTH COVERAGES
I/we reject both Uninsured Motorists Coverage and Excess
Underinsured Motorists Coverage
Date ________ Signed _____________
Date ________ Signed _____________
* Brief summary of coverage only  see policy provisions
for full details.

NOTES
[1] An explanatory note regarding the other appellees is in order. Appellee Capital Casualty, Inc., d/b/a Capital-Doxsee Insurance Agency ("Capital"), the independent insurance agency which sold the subject policy, was proceeded against below as a third party defendant by West American on an indemnification theory. Cynthia Ann Porter, an employee of Capital, was also a third party defendant. Although Capital and Porter are appellees herein, no issues are raised on appeal regarding West American's third party action against Capital and Porter except for the basic issue of uninsured motorist coverage under the West American policy, i.e. in the event there was no UM coverage over the minimum (as urged by West American), there would be no underlying basis for the third party action.
[2] In the past several years, Section 627.727 has undergone a number of changes. The 1977 version, which was apparently the version involved in Vasquez v. Bankers Insurance Company, 502 So.2d 894 (Fla. 1987) (a case we discuss infra), required the insurer to provide UM coverage to insureds except "when, or to the extent that, any insured named in the policy shall reject the coverage." In 1982, the legislature added the requirement that such rejection be in writing. Chapter 82-243, section 544, Laws of Florida. The statute remained the same in 1983, the year in which the subject policy was issued. In 1984, the statute was again amended by Chapter 84-41, Laws of Florida, to provide that the rejection of UM or selection of lower limits "shall be on a form approved by the Insurance Commissioner." That amendment further added the following:

The form shall fully advise the applicant of the nature of the coverage and shall state that the coverage is equal to bodily injury liability limits unless lower limits are requested or the coverage is rejected. The heading of the form shall be in 12-point bold type and shall state: "You are electing not to purchase certain valuable coverage which protects you and your family or you are purchasing uninsured motorist limits less than your bodily injury liability limits when you sign this form. Please read carefully." If this form is signed by a named insured it shall be a conclusive presumption that there was an informed, knowing rejection of coverage or election of lower limits.
Of course, the instant case is governed by the 1983 version of the statute and our summary of the above legislative changes is admittedly of limited significance to this opinion. However, we have found it helpful in our review of the pertinent cases construing Section 627.727 to be cognizant of the particular version of 627.727 involved in each case.
In our review of the pertinent cases and the possible effects of the legislative changes to Section 627.727, we note that in Bankers Insurance Company v. Vasquez, 483 So.2d 440 (Fla. 4th DCA 1985), our sister court apparently took comfort in the fact that  although it was dealing in Vasquez with an earlier version (apparently 1977) of the statute  the legislature had promulgated the amendments quoted above in this footnote which amendments, particularly that portion of the amendments which provide for a presumption by reason of the insured's signature on the rejection form, bolstered (in the Fourth District's view) its holding in favor of the insurance carrier. In referring to those amendments, however, the Vasquez court erroneously referred to Chapter 85-62, Section 16, Laws of Florida, instead of the correct legislative act, Chapter 84-41. While Chapter 85-62, section 16, contained a "revisor's note" stating, "Amended to improve clarity and facilitate correct interpretation," Chapter 84-41 contained no such note. The significance of the Vasquez court's erroneous reliance upon 85-62 is apparent from its following statement referring to the revisor's note which, although appearing in Chapter 85-62, appears nowhere in Chapter 84-41, the applicable statute to which we are sure the Fourth District intended to refer.
[W]e are cognizant of the revisor's comment to this statutory amendment which makes it clear no change in the law was intended... .
483 So.2d at 443. Actually, the only change made in Section 627.727 by Chapter 85-62 was the addition of one word. We would also note that the Second District has indicated a disinclination to rely upon the Chapter 84-41 amendments as a guide to legislative intent of the statute in its pre-1984 form. See Nationwide Property and Casualty Insurance Company v. Marchesano, 482 So.2d 422, 425, n. 1 (Fla. 2d DCA 1985).
[3] See footnote 2 supra.
[4] This is the same Fourth District opinion as that to which we referred in footnote 2, supra.
[5] The Vasquez insurance application, including the rejection form, is conveniently reproduced in the Fourth District's opinion at 483 So.2d 441 and 442.
[6] By our holding, we are not suggesting that a rejection form in a case which is governed by the statute (627.727) as it existed prior to the Chapter 84-41 amendments (supra, footnote 2) must be "unequivocal, unmistakable and plainly worded" in order for there to be the requisite knowing rejection. There may be situations where the insured will know, in the absence of any oral or written advice from the insurer, of the requirements of the law regarding the availability of UM coverage under the statute. See Kimbrell v. Great American Insurance Company, 420 So.2d 1086, 1088 (Fla. 1982); Nationwide Mutual Fire Insurance Company v. Kauffman, 495 So.2d 1184, 1187 (Fla. 4th DCA 1986). We, of course, do not have that situation in the case at bar  or at least there is certainly nothing in the record demonstrating such knowledge as would support summary judgment.