Herbert J. McGLINCHEY, Catherine J. McGlinchey, Plaintiffs,

v.

HARTFORD ACCIDENT AND INDEMNITY COMPANY, et al., Defendants.

Civ. A. No. 87–1707.

United States District Court, E.D. Pennsylvania.

Aug. 5, 1988.

See also 666 F.Supp. 70.

A. Richard Feldman, Bazelon, Less & Price, Philadelphia, Pa., for plaintiffs.

Nancy M. Goodwin, Thompson and Pennell, Philadelphia, Pa., for Liberty Mut. Ins. Co.

Barbara J. O'Connell, Sweeney, Sheehan and Spencer, Philadelphia, Pa., for Hartford Acc. & Indem. Co.

## MEMORANDUM AND ORDER

DITTER, District Judge.

Presently before me is the motion for summary judgment of defendant Liberty Mutual Insurance Company with regard to count I of plaintiffs' complaint. The following facts are apparent from the parties' briefs:

Plaintiff Herbert J. McGlinchey was injured in an accident with an uninsured motorist in Naples, Florida, on November 11, 1983. At the time of the accident, plaintiff was driving a car he had rented from Budget Rent–A–Car of Fort Myers, Florida. Defendant Liberty Mutual provided liability insurance coverage to Budget for its fleet of rental cars. Under the terms of his rental agreement with Budget, plaintiff was insured under the insurance policy Liberty Mutual issued to Budget.

In accordance with Florida law, under its policy with Liberty Mutual, Budget was entitled to uninsured motorist coverage equal to its general liability coverage unless it rejected that coverage or selected uninsured motorist coverage in a lesser amount. Fla.Stat.Ann. § 627.727(1) (1984

& Supp.1988).[1]  Liberty Mutual moves for summary judgment on count I of plaintiffs' complaint, plaintiffs' claim for uninsured motorist benefits against it, on the basis that Paul Lee, Budget's general manager, rejected uninsured motorist coverage for Budget (and thus for plaintiff) for the policy period covering the date of plaintiff's accident.

Plaintiffs argue, first, that the rejection of uninsured motorist benefits effected by Lee was not a knowing and intelligent act and that the question whether it was or not must be submitted to the jury, thereby making summary judgment on count I inappropriate. Florida courts have consistently held that a valid rejection of the uninsured motorist coverage provided by Florida statute must be knowingly and intelligently made. *E.g., American Fire & Indem. Co. v. Spaulding,* 442 So.2d 206, 208 (Fla.1983); *Kimbrell v. Great American Ins. Co.,* 420 So.2d 1086, 1088 (Fla. 1982). *See also Lancaster Oil Co., Inc. v. Hartford Acc. & Indem. Co.,* 486 F.Supp. 399 (N.D.Fla.1980). In *Kimbrell,* the Florida Supreme Court stated that the question whether an insured has knowingly rejected uninsured motorist coverage is an issue to be decided by the trier of fact. *Kimbrell,* 420 So.2d at 1088. In a more recent decision, however, the Florida Supreme Court affirmed the reversal by the district court of appeals of a trial court's denial of a directed verdict to an insurer on the question whether there had been a knowing rejection of coverage. *Vasquez v. Bankers Ins. Co.,* 502 So.2d 894 (Fla.1987). Finding that the insured had signed a form written in bold print which unambiguously rejected uninsured motorist coverage, the Florida Supreme Court concluded that there was no evidence supporting the contention that

---

**1.** Section 627.727(1), the statute in effect in November, 1983, at the time of plaintiff's accident, provides in relevant part:

No motor vehicle liability insurance policy shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless uninsured motor vehicle coverage is provided therein or supplemental thereto for the protection of persons insured thereunder

who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness, or disease, including death, resulting therefrom. However, the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy rejects the coverage in writing.

*Id.*

the rejection of uninsured motorist was not knowingly and intelligently made. *Id.* at 896. The Florida Supreme Court thus stated that a directed verdict should have been entered in favor of the insurer. *Id.* The court emphasized that where no evidence has been presented supporting the contention that a rejection was not knowing, the issue need not be submitted to the jury. *Id.*

In this case, Lee, on behalf of Budget,[2] signed, on March 25, 1983, for the policy year March 18, 1983, to March 18, 1984,[3] a form written in bold print which clearly explained the uninsured motorist coverage options available to Budget as its insured. Under the heading "Important—Uninsured Motorist Insurance," the form stated:

> We are required by Florida law to notify you of all options available to you regarding Uninsured Motorists Coverage. They are:
>
> 1. You are entitled to Uninsured Motorists coverage in an amount equal to your limits for Bodily Injury Liability coverage.
>
> 2. Regardless of any lower limits you may carry for Bodily Injury Liability, you are entitled upon written request, to limits up to $300,000 each accident.

> 3. You may select Uninsured Motorists limits as low as $20,000 each accident, if your Bodily Injury limits are higher than that.
>
> 4. You may entirely reject Uninsured Motorists coverage.
>
> 5. You are entitled, upon written request, to select Excess Underinsured Motorist Coverage, which includes the benefits of Uninsured Motorists but applies the amount purchased in addition to liability insurance carried by the other party.

The form further explained uninsured motorist and excess underinsured motorist coverage as follows:

> **Uninsured Motorists Coverage applies to covered persons who suffer bodily injuries to the extent of their recovery rights against those legally responsible. The limit purchased is reduced by the amount of liability insurance carried by the person who is liable.
>
> **Excess Underinsured Motorists Coverage provides the same protection as Uninsured Motorists Coverage, except the limit of coverage purchased is not reduced by the liability insurance carried by the person who is liable.

---

**2.** In their brief, plaintiffs question the authority of Lee to reject uninsured motorist coverage on behalf of Budget. Given that Lee was general manager of Budget in 1983 with responsibility for procuring its insurance, his authority to reject uninsured motorist coverage on Budget's behalf is clear. Plaintiffs, moreover, have presented no evidence to support their argument that Lee had no authority to reject the uninsured motorist coverage on Budget's behalf.

Plaintiffs also argue that, because the rejection form states that "Each coverage election must be signed by a Named Insured, Executive Officer or Partner," Lee's signature, as general manager, was insufficient to validly reject uninsured motorist coverage for Budget. I disagree. Budget had clearly authorized Lee to act on its behalf in accepting or rejecting coverage. Since a corporate entity can only act through its agents, Lee's signature as Budget's agent is Budget's signature, as the "Named Insured" for all intents and purposes. Further, Lee's position as general manager is easily the equivalent of an "Executive Officer". Finally, since both Budget and Liberty accepted Lee's authority to sign for Budget when he did so, plaintiffs cannot now challenge that authority.

**3.** Plaintiffs argue that the fact that the rejection form was signed on March 25, 1983, after the March 18, 1983, effective date of the policy year, somehow invalidates the rejection. I can find no support in Florida law, nor have plaintiffs directed me to any, for such an argument. Section 627.727(1) provides that unless the named insured requests uninsured motorist coverage in writing, such coverage need not be provided in any policy which *renews* an existing policy issued to him by the same insurer, when the named insured had rejected the coverage in connection with the previous policy. *Id.* Thus, since Budget had rejected uninsured motorist coverage in its policy with Liberty Mutual for the prior policy year, such rejection would be effective as to the 1983–84 policy year unless Budget requested uninsured motorist coverage from Liberty Mutual in writing. *See American Fire & Indemnity Co. v. Spaulding,* 442 So.2d 206, 208 n. 4 (Fla.1983) (noting amendment of section 627.727(1) to provide that once uninsured motorist coverage has been rejected, such coverage need not be offered by insurer when policy is renewed).

These descriptions were noted to be a brief summary of coverage only, and the form advised the reader to see policy provisions for full details.[4] Lee signed the portion of the form rejecting both uninsured motorist coverage and excess underinsured motorist coverage.

In his deposition, Lee explained that Bill Henderson, Liberty Mutual's insurance agent, personally met with him and discussed uninsured motorist coverage. Lee testified that over the years he had discussed with Henderson Budget's decision to reject uninsured motorist coverage. Lee stated that he believed that for Budget to carry uninsured motorist coverage would be duplicative because most car renters would have such coverage under their personal auto policies. Since Florida law did not require Budget to carry it, Lee testified that he decided to reject the coverage. Budget's decision, as evident from Lee's deposition, was made on the basis that

uninsured motorist coverage would be of no benefit to Budget which was protected from any exposure it might have by its general liability policies. In rejecting uninsured motorist coverage, Budget made a business decision not to extend the added protection of this coverage to its customers. Coupled with the written rejection form, Lee's deposition testimony shows a knowing and intelligent rejection of uninsured motorist coverage under Florida law. *See Nationwide Mutual Fire Ins. Co. v. Kauffman*, 495 So.2d 1184, 1187 (Fla.Dist. Ct.App.1986). In contrast plaintiffs have offered no evidence to show that Lee's waiver on behalf of Budget was anything but knowing and intelligent.[5] *See, e.g., Jackson v. State Farm Fire and Casualty Co.*, 469 So.2d 191 (Fla.Dist.Ct.App.1985) (entry of summary judgment in insurer's favor affirmed where insured offered no evidence to support her contention that rejection was not knowing).

**4.** Plaintiffs contend that the form does not adequately explain the purpose or benefits of uninsured motorist coverage. Plaintiffs rely on *Riggsby v. West American Ins. Co.*, 505 So.2d 1364 (Fla.Dist.Ct.App.1987), in support of their argument that the rejection form is vague. In *Riggsby*, the district court of appeals reversed the grant of summary judgment in the insurer's favor because the rejection form signed by the insured was not "unequivocal, unmistakable and plainly worded." *Id.* at 1368. The court found that the form contained no language informing the insured of the consequences of rejecting uninsured motorist coverage or of selecting coverage in a lesser amount than that which the insurer was required to make available. *Id.* In this case, the form signed by Lee clearly sets forth the uninsured motorist coverage options available to Budget, as the insured, in plain, unmistakable language. In any event, as explained *infra*, Lee had discussed uninsured motorist coverage with Liberty Mutual's agent and was aware of its benefits before he decided to reject it.

**5.** Plaintiffs attempt to create a genuine issue of material fact with regard to the rejection by Budget by casting doubt on the credibility of Lee. Plaintiffs argue that production of the rejection form was made after Liberty Mutual produced a copy of its policy which contained no written rejection of uninsured motorist coverage. This, in plaintiffs' view, suggests that the rejection by Budget was manufactured after the fact for purposes of this litigation. Plaintiffs' allegations of misconduct on the part of Budget and Lee are completely unsubstantiated and I reject them.

Plaintiffs also accuse Lee of providing false testimony in his affidavit when he testified that he was vice-president and general manager of Budget in 1983 at the time he rejected uninsured motorist coverage for Budget. In his affidavit, Lee states that "in his position as General Manager," he reviewed the insurance coverage provided to Budget Rent–A–Car by Liberty Mutual Insurance Co. Lee further states that on or before March 25, 1983, he was informed by Liberty Mutual "that uninsured motorist coverage provided for the payment of certain benefits for damages caused by owners or operators of uninsured or underinsured motor vehicles," and that Budget "could purchase uninsured motorists coverage equal to its bodily injury liability limits." Lee next states, in the paragraph to which plaintiffs object that, "on behalf of Budget Rent–A–Car, as its duly appointed agent, Vice–President and General manager," he rejected uninsured motorist coverage for the policy period March 18, 1983, through March 18, 1984, by signing the rejection form.

As Lee testified in his deposition, he was general manager of Budget in 1983 and became vice-president in 1986 after a corporate restructuring. I find no intent on Lee's part to provide misleading testimony in his affidavit, particularly since he identifies himself, at one point, solely as General Manager of Budget. In any event, as stated earlier, Lee clearly was vested with authority to reject coverage on behalf of Budget. Plaintiffs have offered no evidence that Lee intentionally misstated his corporate position and, moreover, I find it irrelevant to the resolution of this motion.

Plaintiffs next take issue with the effectiveness of Budget's rejection of uninsured motorist coverage with regard to plaintiff. Under established Florida law, a lessor's rejection of uninsured motorist coverage is effective as to the lessee even if the lessee is unaware of it. *E.g., Darnaby v. Greenstein Trucking Co.*, 425 So.2d 656, 658 (Fla.Dist.Ct.App.1983); *Guardado v. Greyhound Rent-A-Car*, 340 So.2d 510, 511–12 (Fla.Dist.Ct.App.1977). *See also Kohly v. Royal Indem. Co.*, 190 So.2d 819, 820 (Fla.Dist.Ct.App.1966), *cert. denied*, 200 So.2d 813 (Fla.1967). Plaintiffs argue, however, that McGlinchey is an "insured" under Liberty Mutual's policy by virtue of his rental agreement with Budget and, therefore, should have been given the option of accepting or rejecting his own uninsured motorist coverage. I cannot accept plaintiffs' argument. First, while all renters are "insured" under Budget's insurance coverage once they sign the rental agreement, they are not the "named insured," as that word is used in the technical sense, under the policy with Liberty Mutual. The "named insured" on the policy is Budget. The decision of a named insured, such as Budget, to accept or reject uninsured motorist coverage, moreover, is binding on any additional insureds under the policy. *Whitten v. Progressive Casualty Ins. Co.*, 410 So.2d 501, 504 (Fla.1982). Furthermore, even if plaintiff was somehow assumed to be a "named insured" under the Liberty Mutual policy, the statute provides that *any* named insured may reject uninsured motorist coverage for *all* insureds, named or additional. *Id.* (quoting *Continental Ins. Co. v. Roth*, 388 So.2d 617 (Fla.Dist.Ct.App.1980)). Second, as attractive as it might be, plaintiffs' suggestion that all lessees be free to choose their own coverage is contrary to Florida law which allows a lessor, as the named insured of an insurance policy, to make a valid rejection which binds a lessee. The Florida courts and legislature have not accepted plaintiffs' suggestion and, inasmuch as I am bound by Florida law, I cannot accept it either. Summary judgment will, therefore, be entered in favor of Liberty Mutual against plaintiffs on count I of plaintiffs' complaint.

## ORDER

AND NOW, this 5th day of August, 1988, it is hereby ordered that defendant Liberty Mutual Insurance Company's motion for summary judgment on count I of plaintiffs' complaint is granted. Summary judgment is entered in favor of defendant Liberty Mutual and against plaintiffs on count I of plaintiffs' complaint.

It is further ordered that, summary judgment having been entered against plaintiffs on counts I and II of their complaint, plaintiffs' remaining claims against defendant Hartford Accident and Indemnity Co. are hereby referred to the court's arbitration program.