866 F.2d 651
 McGLINCHEY, Herbert J., McGlinchey, Catherine J.
v.
HARTFORD ACCIDENT AND INDEMNITY CO. and Liberty Mutual
Insurance Company.
Appeal of Herbert and Catherine McGLINCHEY.
 No. 88-1739.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6)
 Jan. 24, 1989.
Decided Feb. 3, 1989.
 
 A. Richard Feldman, Bazelon, Less & Price, Philadelphia, Pa., for appellants.
 Anne Nancy M. Goodwin, Joseph R. Thompson, Thompson & Pennell, Philadelphia, Pa., for appellees.
 Before GIBBONS, Chief Judge, and SEITZ, and GREENBERG, Circuit Judges.OPINION OF THE COURT
 SEITZ, Circuit Judge.
 
 
 1
 Plaintiffs Herbert McGlinchey and Catherine McGlinchey appeal from the district court's entry of judgment in favor of defendant Liberty Mutual Insurance Company ("Liberty"), 692 F.Supp. 564. In addition, plaintiffs appeal from the district court's order denying their motion to remand this case to the state court from which it was removed, 666 F.Supp. 70. We have jurisdiction as this is an appeal from a final judgment. 28 U.S.C. Sec. 1291.
 
 I. BACKGROUND
 
 2
 On November 11, 1983, Herbert McGlinchey, while driving a car that he had rented from Budget-Rent-A-Car ("Budget") two days earlier, was injured in an automobile accident in Naples, Florida. Neither the driver of the other car nor that car's owner had insurance.
 
 
 3
 Thereafter the plaintiff Herbert McGlinchey brought this action in the Pennsylvania state court against defendants Liberty and Hartford Accident & Indemnity Company ("Hartford"), based on an insurance policy which plaintiff had purchased from Hartford. Liberty was, at the time of plaintiff's accident, Budget's insurance carrier. Later Catherine McGlinchey was joined as a plaintiff.
 
 
 4
 The entire action was removed to the district court. Count I of the three-count Complaint sought uninsured motorist benefits[1] from Liberty. Liberty filed a motion for summary judgment alleging that uninsured motorist benefits were not available to the plaintiffs because uninsured motorist coverage had been rejected by the named insured, Budget. This motion was granted by order of the district court. Thereafter, the two counts against Hartford were settled and this appeal followed.
 
 II. REMOVAL
 
 5
 This case was removed to federal court pursuant to 28 U.S.C. Sec. 1441(a). Subsection (a) of Sec. 1441 provides in pertinent part: "any civil action brought in a State Court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." Here the federal district court found original jurisdiction based on the diverse citizenship of the parties. See 28 U.S.C. Sec. 1332(a)(1). It is uncontroverted that plaintiffs are citizens of Pennsylvania, Liberty is a citizen of Massachusetts and Hartford is a citizen of Connecticut.
 
 
 6
 Plaintiffs claim that diversity was lacking in this case because under 28 U.S.C. Sec. 1332(c) the citizenship of Herbert McGlinchey, the insured, must be imputed to both Liberty and Hartford. Subsection (c) of Sec. 1332 provides:
 
 
 7
 For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any state by which it has been incorporated and of the state where it has its principal place of business: Provided further, That in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which the insured is not a party-defendant, such insurer shall be deemed a citizen of the state of which the insured is a citizen, as well as any state by which the insurer has been incorporated and the State where it has its principal place of business.
 
 
 8
 Thus, plaintiffs argue that their action against Hartford and Liberty is a "direct action against the insurer of a policy or contract of liability insurance" thereby making Liberty and Hartford a "citizen of that state in which the insured is a citizen."
 
 
 9
 In light of controlling precedent in this Circuit, we conclude that plaintiffs' contention is meritless. See, e.g., Myers v. State Farm Insurance Co., 842 F.2d 705, 707 (3d Cir.1988); Shiffler v. Equitable Life Assurance Society of the United States, 838 F.2d 78, 82 n. 5 (3d Cir.1988). It has been said that a "direct action," as that term is used in Sec. 1332(c), does not exist "unless the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured." Myers v. State Farm Insurance Co., 842 F.2d at 707 (quoting Fortson v. St. Paul Fire and Marine Insurance Co., 751 F.2d 1157, 1159 (11th Cir.1985)). In Myers, this Court specifically found that when an insured, as the injured party, brings suit against his insurer, no direct action could be found because the insurer's status is not that of a "payor of a judgment based on the negligence of one of its insureds." Id. (quoting, Velez v. Crown Life Insurance Co., 599 F.2d 471, 473 (1st Cir.1979)). Thus, plaintiffs' suit against Liberty and Hartford cannot be said to have been a direct action within the meaning of 28 U.S.C. Sec. 1332(c).
 
 
 10
 Plaintiffs also challenge the removal of this action from state court on two other grounds. First, plaintiffs contend that Liberty failed to join in or consent to the removal petition. See Lewis v. Rego Co., 757 F.2d 66, 68 (3d Cir.1985) ("Section 1446 has been construed to require that when there is more than one defendant, all must be joined in the removal petition."). Second, plaintiffs argue that the removal petition was not timely filed.
 
 
 11
 Plaintiffs' arguments fail because they neglected to present these contentions to the district court. It is a clearly established rule of this Court that issues will not be considered for the first time on appeal absent some special circumstances. See Neal v. Secretary of the Navy, 639 F.2d 1029, 1035 (3d Cir.1981); Caisson Corp. v. Ingersoll-Rand Co., 622 F.2d 672, 680-81 (3d Cir.1980); Newark Morning Ledger Co. v. United States, 539 F.2d 929, 932 (3d Cir.1976). While it is true that contentions questioning the subject matter jurisdiction of this Court must be considered even if not raised before the district court, neither the failure to join all the defendants in a removal petition nor the failure to file a removal petition within the 30 day statutory time limit affect this Court's jurisdiction. See Albritton Communications Co. v. National Labor Relations Board, 766 F.2d 812, 820 (3d Cir.1985) ("[R]emoval proceedings are in the nature of process, and defects in removal procedures are waivable."), cert. denied, 474 U.S. 1081, 106 S.Ct. 850, 88 L.Ed.2d 891 (1986). See also Harris v. Edward Hyman Co., 664 F.2d 943, 945 (5th Cir.1981) ("[S]trict compliance with the limitations period in the removal statute does not effect the jurisdiction of the district court."); Intercoastal Refining Co., Inc. v. Jalil, 487 F.Supp. 606, 608 (S.D.Tex.1980) ("The failure of a defendant to join in a removal petition or consent to such action within the thirty day limitation is a waivable nonjurisdictional defect") (citing Robertson v. Ball, 534 F.2d 63 (5th Cir.1976)).
 
 
 12
 Plaintiffs contention that they implicitly raised these issues before the district court is unavailing. Plaintiffs argue that by noting the specific dates when the action was commenced and when the motion to remove was filed they can be said to have raised the issue of timeliness. In addition, plaintiffs claim that by stating in their motion to remand that Hartford "allegedly" included Liberty in the petition for removal, they can be said to have raised the issue of joinder of all defendants. As plaintiffs admit, these statements do not amount to an express argument and do not justify appellate review of the issues so obliquely raised.
 
 
 13
 Having determined that the district court was clothed with subject matter jurisdiction, we conclude that the removal was proper. See Medlin v. Boeing Vertol Co., 620 F.2d 957, 960 (3d Cir.1980); Recchion v. Kirby, 637 F.Supp. 290, 292 (W.D.Pa.1986).
 
 
 14
 III. PROPRIETY OF DISTRICT COURT'S ORDER GRANTING SUMMARY JUDGMENT
 
 
 15
 We are called on to review the district court's order granting summary judgment in favor of Liberty. We must review the evidence in the light most favorable to the plaintiffs, the non-moving party, drawing all reasonable inferences against Liberty, the moving party, to determine if Liberty was entitled to judgment as a matter of law. Lang v. New York Life Insurance Co., 721 F.2d 118, 119 (3d Cir.1983). However, "[w]here the record taken as a whole could not lead a trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586, 106 S.Ct. at 1356.
 
 
 16
 It is appropriate in this diversity case to look to Florida law because Herbert McGlinchey rented the car in Florida, the accident occurred in Florida and Liberty's policy was issued in Florida. Florida's uninsured motorist statute provides: "No automobile liability insurance ... shall be delivered or issued for delivery in this state ... unless coverage is provided therein or supplemental thereto in not less than the limits of liability insurance purchased by the named insured...." Fla.Stat. Sec. 627.727(1). The statute further provides that "the coverage required under this section shall not be applicable when, or to the extent that, any insured named in the policy shall reject the coverage." Fla.Stat. Sec. 627.727(1).
 
 
 17
 In this case a rejection of uninsured motorist coverage was introduced by Liberty as an exhibit to an affidavit by Paul Lee; Paul Lee was then the General Manager of Budget.[2] The form dated March 25, 1983 on the letterhead of Liberty stated: "I/we reject Uninsured Motorists Coverage and Excess Underinsured Motorists Coverage." This form was signed by Paul Lee. It is established law under the Florida uninsured motorist statute that a lessor, such as Budget, can reject uninsured motorist coverage on behalf of the lessee (i.e. McGlinchey) even if the lessee was unaware of the availability of the coverage. Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 504 (Fla.1982); Darnaby v. Greenstein Trucking Co., 425 So.2d 656 (Fla.App. 4th Dist.1983); Kohly v. Royal Indemnity Co., 190 So.2d 819 (Fla.App. 3d Dist.1966) cert. denied, 200 So.2d 813 (1967).
 
 
 18
 Thus, the only way in which plaintiffs can prevail is to challenge the validity of the rejection. In this regard, plaintiffs raise three arguments: (1) the document purporting to reject uninsured motorist coverage was not authentic; (2) Paul Lee was not the proper person to reject the coverage; and, (3) the rejection was not knowingly and intentionally made. We will deal with each of these contentions in turn.
 
 
 19
 A. AUTHENTICITY OF THE REJECTION OF UNINSURED MOTORIST BENEFITS
 
 
 20
 Plaintiffs argue that the form rejecting uninsured motorist benefits was created after the start of this litigation in an attempt by Liberty to avoid liability. We must examine the record as a whole to determine if a trier of fact could reasonably find that the rejection form was not authentic. First, plaintiffs point out that during discovery, the rejection form was not given to them by Liberty as part of its file. Rather they note that it was produced by Lee during his deposition as part of the file maintained by Budget. Plaintiffs' contend that Liberty's failure to produce the rejection form at the time when it produced the body of the policy supports an inference that the uninsured motorist rejection was fabricated.
 
 
 21
 Next, plaintiffs challenge the authenticity of the rejection form by suggesting that Paul Lee, the person who testified on deposition to the form's authenticity, could be found not to be credible. In his affidavit, Paul Lee stated: "On and before March 25, 1983, Affiant, on behalf of Budget-Rent-A-Car as its duly appointed agent, Vice President and General Manager, rejected uninsured motorist coverage...." Plaintiffs note that at the time of the purported rejection Paul Lee was not the Vice President of Budget. Plaintiffs neglect to mention that in his affidavit, Lee stated: "That in his position as General Manager, he reviewed the insurance coverage provided to Budget ..."
 
 
 22
 In addition, Paul Lee attested that the copy of the rental agreement attached to his affidavit was a true and correct copy of the agreement between Budget and McGlinchey. This agreement, however, differed from a copy later produced by Paul Lee at his deposition. The copy of the rental agreement which Lee attached to his affidavit explicitly informed a renter that uninsured motorist coverage had been waived. The copy of the agreement later produced by Lee at his deposition, however, contained no such express declaration. This variance is of limited importance because uninsured motorist coverage can be rejected by a rental agency without the knowledge of the short-term renter. See, e.g., Whitten v. Progressive Casualty Insurance Co., 410 So.2d 501, 504 (Fla.1982). Moreover, although plaintiffs submit that the erroneous production can only lead to the conclusion that Lee intentionally erred, Lee stated in his deposition that this was the product of an honest clerical mistake.
 
 
 23
 Plaintiffs contend that a jury could view the above two misstatements as evidence that Paul Lee was in league with Liberty and fabricated the rejection form in an effort to aid Liberty. Although we are cognizant of the general admonition to avoid deciding questions of credibility at the summary judgment stage, Losch v. Borough of Parkesburg, 736 F.2d 903, 909 (3d Cir.1984), we believe that plaintiffs have not cast sufficient doubt on the credibility of Paul Lee to allow a reasonable juror to discredit his testimony.
 
 
 24
 Viewing the facts, as we must, in the light most favorable to the plaintiffs, we believe that the district court was justified in concluding that there was not a genuine issue of material fact as to whether the rejection form was fabricated. Plaintiffs, in the face of the signed, dated and sworn rejection--a rejection whose authenticity Lee testified to in his deposition--have not proffered sufficient evidence to allow a reasonable juror to find that the form is not authentic.
 
 
 25
 B. PAUL LEE'S AUTHORIZATION TO REJECT UNINSURED MOTORIST COVERAGE
 
 
 26
 On the face of Liberty's rejection form it states that "Each coverage election must be signed by a Named Insured, Executive Officer or Partner." Plaintiffs claim that Paul Lee, who was only the General Manager when he signed the rejection, was not the proper person to reject uninsured motorist coverage. They therefore conclude that the coverage was not rejected and existed as a matter of law.
 
 
 27
 We conclude that plaintiffs do not have standing to raise this claim. The Florida courts which have reached the issue have uniformly held that a permissive user has no standing to "complain of technical deficiencies regarding the securing or retention of a written memorandum demonstrating the fact of rejection." Del Prado v. Liberty Mutual Insurance Company, 400 So.2d 115, 117 (Fla.App. 4th Dist.1981).[3] See St. Paul Fire and Marine Insurance Co. v. Smith, 504 So.2d 14, 15 (Fla.App. 2d Dist.1987); Compass Insurance Co. v. Woodard, 489 So.2d 1157, 1158 (Fla.App. 4th Dist 1986).[4] Thus, plaintiffs do not have standing to contend that Lee was not technically authorized, by the terms of Liberty's uninsured motorist election form, to reject uninsured motorist coverage.
 
 
 28
 Even if we are to assume, at plaintiffs urging, that the plaintiffs as lessees are not "permissive users" we would still be driven to the same conclusion. This is the case because an automobile rental agency, like a corporation which allows its employees to use company cars, can reject uninsured motorist coverage and have such rejection bind renters of the cars. See Whitten v. Progressive Casualty Insurance Company, 410 So.2d 501, 504 (Fla.1982). See also Kohly v. Royal Indemnity Company, 190 So.2d 819 (Fla.App. 3d Dist.1966), cert. denied, 200 So.2d 813 (1967). Thus, for the purposes of uninsured motorist coverage rejection, a short-term renter of a car is equivalent to a permissive user and should similarly be denied standing to raise issues such as the one presented.
 
 C. KNOWING AND INTELLIGENT WAIVER
 
 29
 Lastly, plaintiffs contend that Lee did not knowingly reject uninsured motorist coverage.[5] It is clearly established that the Florida uninsured motorist statute requires "that a rejection of UM [uninsured motorist] coverage or a selection of lower limits of coverage must be knowingly made." Kimbrell v. Great American Insurance Co., 420 So.2d 1086, 1088 (Fla.1982).[6] "An informed rejection requires that the insured know that he is entitled to UMI [uninsured motorist insurance] limits equal to the bodily injury limits in the policy." Baum v. Allstate Insurance Co., 496 So.2d 201, 202 (Fla.App. 4th Dist.1986). See Nationwide Mutual Fire Insurance Co. v. Kauffman, 495 So.2d 1184 (Fla.App. 4th Dist.1986).
 
 
 30
 In this case there is abundant proof that the rejection was knowingly made. First, Paul Lee explicitly rejected both uninsured motorist coverage and excess underinsured motorist coverage. Specifically, the form he signed stated:
 
 
 31
 We [Liberty] are required by Florida law to notify you of all options available to you regarding Uninsured Motorist Coverage. They are:
 
 
 32
 1. You are entitled Uninsured Motorist coverage in an amount equal to your limits for Bodily Injury Liability coverage.
 
 
 33
 2. Regardless of any lower limits you may carry for Bodily Injury Liability, you are entitled upon written request, to limits up to $300,000 each accident.
 
 
 34
 3. You may select Uninsured Motorist limits as low as $200,000 each accident, if your Bodily Injury limits are higher than that.
 
 
 35
 4. You may entirely reject Uninsured Motorist Coverage.
 
 
 36
 5. You are entitled, upon written request, to select Excess Underinsured Motorist Coverage, which includes the benefits of Uninsured Motorists but applies to the amount purchased in addition to liability insurance carried by the other party.
 
 
 37
 * * *
 
 
 38
 * * *
 
 
 39
 I [Paul Lee] reject Uninsured Motorist Coverage and Excess Underinsured Motorist Coverage.
 
 
 40
 Although, arguably, this form might be such that Lee's signature in and of itself does not conclusively constitute a knowing rejection, Compare Vasquez v. Bankers Insurance Co., 502 So.2d 894, 896 (Fla.1987) with Riggsby v. West American Insurance Co., 505 So.2d 1364, 1367 (Fla.App. 1st Dist.1987), the signature on this particular form is very persuasive evidence that the rejection was knowingly made.
 
 
 41
 Second, the deposition testimony of Lee reveals that he knowingly rejected uninsured motorist coverage, to wit:
 
 
 42
 Q: [By Mr. Peck for plaintiffs] When you [Lee] executed these rejections of uninsured motorist coverage, was that done annually?
 
 
 43
 A: Yes.
 
 
 44
 Q: And was that a form that came to you through the mail, or did the insurance representative appear personally and have you sign it? How was that done to the best of your knowledge?
 
 
 45
 A: He appeared personally.
 
 
 46
 Q: And who would be that person that would appear to have you sign that form?
 
 
 47
 A: Bill Henderson [a Liberty representative]
 
 
 48
 * * *
 
 
 49
 * * *
 
 
 50
 Q: Could you tell me why that coverage was rejected.
 
 
 51
 A: It was suggested--well, it was additional coverage, that I did not need.
 
 
 52
 * * *
 
 
 53
 * * *
 
 
 54
 Q: [By Mr. Sheppard for defendants] In 1983, you testified earlier that you were the general manager or the managing agent of Budget as it was named then. Were you the person with the authority to procure insurance for Budget?
 
 
 55
 A: Yes.
 
 
 56
 Q: And Mr. Henderson came down personally once a year to discuss coverage with you?
 
 
 57
 A: Yes.
 
 
 58
 Q: And did he offer uninsured motorist insurance to you? You knew that it was available to you?
 
 
 59
 A: Yes.
 
 
 60
 Both the signature on the rejection form and Lee's unrefuted deposition testimony establish, as a matter of law, that Lee knowingly rejected uninsured motorist coverage.
 
 IV. CONCLUSION
 
 61
 The district court's order denying plaintiffs motion to remand this case to the state court will be affirmed. The district court's order entering summary judgment in favor of Liberty will also be affirmed.
 
 
 
 [1]
 Typically, under the terms of uninsured motorist coverage, an insurer agrees to pay an insured for the "damages he [the insured] is legally entitled to recover from the owner or operator of an uninsured or hit and run vehicle. In effect it constitute[s] insurance against a tortfeasor's lack of insurance." 2 I. Shermer, Automobile Liability Insurance, Sec. 20:01 (1987)
 
 
 [2]
 At the time of these proceedings Paul Lee was the General Manager and Vice President of Budget-Rent-A-Car, Fort Meyers
 
 
 [3]
 In predicting state law in a diversity case, it is proper to look for guidance to decisions of the lower state courts. Adams v. Cuyler, 592 F.2d 720, 725 n. 5 (3d Cir.1979)
 
 
 [4]
 The Florida Supreme Court cases cited by plaintiffs are not to the contrary. American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206 (Fla.1983); Kimbrell v. Great American Insurance Company, 420 So.2d 1086 (Fla.1982). In each of these cases, the court did not examine "improper procedures surrounding a knowing rejection" but rather discussed whether or not the rejection was knowing at all. This is a line which has been drawn by at least one Florida Appellate court and one which we will adopt. St. Paul Fire and Marine Insurance Company v. Smith, 504 So.2d 14, 15 (Fla.App. 2d Dist 1987)
 
 
 [5]
 Based on the authority of St. Paul Fire and Marine Insurance Company v. Smith, 504 So.2d 14, 15 (Fla.App. 2d Dist.1987), we can assume that plaintiffs have standing to raise this issue. Although not addressing the issue directly, Kimbrell v. Great American Insurance Co., 420 So.2d 1086 (Fla.1982) and American Fire & Indemnity Co. v. Spaulding, 442 So.2d 206 (Fla.1983), are implicitly in accord
 
 
 [6]
 Plaintiffs, citing Kimbrell, contend that the question of whether a rejection was knowingly made is one of fact to be determined by the jury and one not susceptible of summary judgment. However, this assertion is erroneous in light of the Florida Supreme Court's decision in Vasquez v. Bankers Insurance Co., 502 So.2d 894, 896 (1987). In Vasquez, the Florida Supreme Court discussed the proper interpretation of Kimbrell and stated: "We did not intend to overrule the line of cases holding that a defendant's motion for a directed verdict should be granted when the evidence interpreted in the light most favorable to the plaintiff clearly establishes as a matter of law that the plaintiff is not entitled to relief." Id. Thus as the difference between summary judgment motions and motions for directed verdict is simply one of procedure, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986), we conclude that, under Vasquez, summary judgment can be granted in appropriate cases